PEOPLE v SPARKS

1. CRIMINAL LAW—DEFENDANT'S STATEMENTS—VOLUNTARINESS—MI-
   RANDA RIGHTS—WAIVER—APPEAL AND ERROR.

   The Court of Appeals, in reviewing the correctness of a lower
   court's determination that a defendant had knowingly and
   intelligently waived his *Miranda* rights and voluntarily gave
   statements to the police without the inducement of promises of
   leniency, will affirm such determination unless they are left
   with a definite and firm conviction, after they examine the
   entire record and make an independent determination of volun-
   tariness, that the trial judge erred.

2. CRIMINAL LAW—POLICE INTERROGATION—RIGHT TO COUNSEL—
   WAIVER—SIGNIFICANT PERIOD OF TIME.

   Police interrogation of a person must cease when the person
   asserts his right to counsel until an attorney is present, or,
   after the lapse of a significant period of time, the person
   knowingly and intelligently waives his right to counsel.

3. CRIMINAL LAW—POLICE INTERROGATION—RIGHT TO COUNSEL—MI-
   RANDA REQUIREMENTS—COURT OF APPEALS—HARMLESS ERROR—
   FIRST-DEGREE MURDER.

   A police officer's continued interrogation of a defendant after he
   asserts his right to counsel violates the clear *Miranda* require-
   ment that interrogation must then cease until an attorney is
   present; the Court of Appeals may find in a trial for first-degree
   murder that the admission of statements thus obtained was
   harmless beyond a reasonable doubt where the statements were
   not materially different either from those given to another

REFERENCES FOR POINTS IN HEADNOTES

[1–3] Custodial interrogation: what constitutes "custodial interroga-
   tion" within rule of Miranda v. Arizona requiring suspect be
   informed of his Federal constitutional rights before custodial
   interrogation. 31 ALR3d 565.

Necessity of informing suspect of rights under priviledge against
   self-incrimination, prior to police interrogation. 10 ALR3d 1054.

[4] 65 Am Jur 2d, Rape § 1.

[5] 21 Am Jur 2d, Criminal Law § 165 *et seq.*

40 Am Jur 2d, Homicide §§ 190, 193, 194.

officer after the defendant had waived his right to counsel or from his testimony at trial.

4. RAPE—COMMON LAW—CARNAL KNOWLEDGE.
   Common-law rape has been defined as the carnal knowledge of a woman by force and against her will.

5. CRIMINAL LAW—FIRST-DEGREE MURDER—FELONY MURDER—DOUBLE JEOPARDY—CONSTITUTIONAL LAW.
   A defendant's conviction of first-degree premeditated murder and first-degree felony murder violates his double jeopardy protection where there was only one murder and hence one crime (Const 1963, art 1, § 15).

Appeal from Allegan, George R. Corsiglia, J. Submitted February 9, 1978, at Grand Rapids. (Docket No. 30188.) Decided March 20, 1978.

Roger R. Sparks was convicted of first-degree premeditated murder and first-degree felony murder. Defendant appeals. Affirmed in part, reversed in part.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Fred R. Hunter, III,* Prosecuting Attorney, and *Thomas C. Nelson,* Assistant Attorney General, for the people.

*Wickett, Erickson, Bartl & Haslett, P. C.,* for defendant.

Before: J. H. GILLIS, P. J., and R. B. BURNS and ALLEN, JJ.

R. B. BURNS, J. Defendant was convicted by a jury of one count of first-degree premeditated murder and one count of first-degree felony murder, MCLA 750.316; MSA 28.548, and appeals. We affirm in part and reverse in part.

At about 10:15 p.m. on December 22, 1975, Deborah Knapp borrowed her brother's car and

left her mother's home in South Haven, Van Buren County, to go to a grocery store for potato chips. She did not return home. The following morning her body was found in Allegan County, nude except for socks and shoes, and with multiple stab wounds. That same morning the car was found submerged in the Black River in South Haven, with some of her clothing in the car.

Defendant lived with his wife in South Haven in the home of his mother-in-law, Mrs. Patton. Mrs. Patton went to the South Haven State Police Post in the afternoon of December 23, and told police that when defendant arrived home at 1 a.m. that morning his jacket, clothes and shoes were bloody. Defendant had explained that he was with Steve Pratt, had hit a dog, picked it up, taken it to its owner, and helped bury it. When contacted, Steve Pratt said he was not with defendant. The blood was determined to be human.

Various statements by defendant were admitted at trial. A *Walker*[1] hearing was held to determine the voluntariness of these statements, at the conclusion of which the trial court determined that defendant had knowingly and intelligently waived his *Miranda*[2] rights, and his statements were given voluntarily without the inducement of promises of leniency. On review, we are to examine the entire record and make an independent determination of voluntariness. Unless we are left with a definite and firm conviction that the trial judge erred, we are to affirm. See, *e.g., People v McGillen #1,* 392 Mich 251, 257; 220 NW2d 677, 679 (1974).

Defendant was arrested at 4:45 p.m. on December 23 in Hartford by Trooper Dell. Trooper Dell

---

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

read defendant his rights and asked defendant whether he wished to waive them. As to whether he wanted an attorney, defendant said "It looks like I'm going to need one", and defendant also indicated he wished to remain silent. Trooper Dell then drove defendant to the South Haven State Police Post without speaking to him, arriving at approximately 5:10 p.m. Defendant was taken to see Detective Rank who read defendant his rights. Defendant waived his rights, and gave approximately the same story to Detective Rank that he had given his mother-in-law. However, later in the evening, after having seen his wife, father, and mother-in-law, and having again been advised of his rights and having waived them, defendant told Detective Karsen that he had been with the victim, had engaged in intercourse with her and had struck her, but denied raping her or stabbing her to death.

Defendant repeated substantially the same story he had given Detective Karsen to Detectives Ross and Waldron on December 24 and 26. Before each session he was advised of his rights and waived them. However, at one of these sessions, Ross called defendant a liar, and defendant became angry and said "I don't want to talk to anybody, I want to see a lawyer". Waldron spoke to Ross, who went elsewhere in the partitioned room. Defendant then started talking about an unrelated subject, but Waldron swung the conversation around to the killing.

Detective Karsen obtained approximately the same statement from defendant again on December 30. Prior to questioning, Detective Karsen had defendant recite his rights, and asked if he would talk without an attorney or someone else present. Defendant assented. When asked if he had an

attorney, defendant said no; Detective Karsen then asked if defendant wanted to talk to an attorney and defendant said he did, but he would talk to Karsen without an attorney present.

Defendant argues that all of his statements were inadmissible because they were obtained after he asserted his right to counsel to Trooper Dell and Detectives Ross and Waldron. In *Miranda v Arizona,* 384 US 436, 474; 86 S Ct 1602, 1628; 16 L Ed 2d 694, 723; 10 ALR3d 974, 1011 (1966), the Supreme Court wrote:

"If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent."

Read literally, this passage would seem to indicate that defendant should never have been questioned after his initial assertion of his right to counsel to Trooper Dell, since he was not provided with an attorney. However, the Supreme Court also wrote in *Miranda:*

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." 384 US at 475; 86 S Ct at 1628; 16 L Ed 2d at 724; 10 ALR3d at 1011.

Does this latter passage apply where defendant has already requested an attorney?

Although the Supreme Court explicitly distinguished the instant situation in *Michigan v Mosley*, 423 US 96; 96 S Ct 321; 46 L Ed 2d 313 (1975), the Court's reasoning in *Mosley* is helpful in resolving the instant ambiguity. In *Mosley* the Supreme Court interpreted the *Miranda* requirement that the interrogation must cease when an individual asserts his right to remain silent. The Court observed that the passage could be read as permitting resumption of interrogation after a momentary respite, but that such interpretation would permit continuing interrogation to undermine the will of the person being interrogated. At the other extreme, the passage could be read as requiring that interrogation never resume, which would frustrate legitimate police activity and the person's right to subsequently waive his right to remain silent. The Court determined the critical issue to be whether the person's right to cut off questioning was scrupulously honored.

The instant passage cannot be read as permitting resumption of interrogation after a momentary respite, for that would do violence to the language requiring the interrogation to "cease until an attorney is present". However, the passage may be read as permitting a later interrogation after the passage of a significant period of time. To hold that the counsel right can never be knowingly and intelligently waived after having previously been asserted would tend to frustrate legitimate police activity and defendant's right to speak without the aid of counsel. We therefore hold that, when a person asserts his right to counsel, the interrogation must cease until an attorney is present, or, after the lapse of a significant period of time, the person knowingly and intelligently waives his counsel right. See, *e.g.,*

*United States v Pheaster,* 544 F2d 353, 367–368 (CA 9, 1976).

Although we find a very close question as to whether defendant's waiver of his right to counsel to Detective Rank was knowing and intelligent, due to the relatively short period of time between defendant's assertion of his right to Trooper Dell and its subsequent waiver, we are not left with a definite and firm conviction that the trial court erred. *People v McGillen, supra.* Defendant's statement that it looked like he was going to need an attorney was sufficiently equivocal to raise a doubt as to whether he in fact believed he needed an attorney; Trooper Dell scrupulously honored his right to cut off questioning and did not speak to him on the trip to the State Police Post; the subsequent waiver was to a different person at a different location; there was no evidence that psychological pressure was brought to bear to induce the waiver; and the warnings were repeated prior to the waiver. Defendant's initial statement was substantially the same as that given to his mother-in-law, which suggests an intelligent decision that he could make a non-damaging statement without the aid of an attorney. All truly damaging statements given on December 23 came after defendant had been given his rights three times by police and his father had told him not to talk until after he had seen a lawyer. The prosecution carried its heavy burden of showing knowing and intelligent waiver.

Detective Waldron's continuing interrogation after defendant asserted his right to counsel violated the clear *Miranda* requirement that the interrogation must cease until an attorney is present.

Prior to taking defendant's statement on December 30, Detective Karsen carefully ascertained

exactly what defendant desired with reference to his right to counsel. There is no indication that defendant's waiver was the product of the now repeated failure of the police to honor his request for counsel. Although this issue also presents a close question, we again are not left with a definite and firm conviction that the trial court erred. *People v McGillen, supra.*

It is unclear at which interview and at which point in the interviews with Detectives Ross and Waldron defendant asserted his right to counsel. However, his statements to them were not materially different from those given to Detective Karsen or from his own testimony at trial. Thus, whatever ought to have been excluded was cumulative, and its admission harmless beyond reasonable doubt.

Defendant also argues that the statements were involuntary because he was led to believe that he would obtain leniency and psychiatric treatment in exchange for them. *Cf. People v Pallister,* 14 Mich App 139; 165 NW2d 319 (1968). Although there is some testimony to support defendant's argument, the trial court found more credible testimony that no promises were made from which defendant could have inferred he would receive leniency and treatment in exchange for the statements. We are not left with a definite and firm conviction that the trial court erred. *People v McGillen, supra.*

Defendant also argues that the admissions were obtained as a result of an illegal arrest. The trial court took the issue under advisement, and the list of docket entries in the lower court record indicates that further testimony was taken on this issue, arguments heard, and the issue resolved against defendant by the trial court. Since we have not been supplied with a transcript of this later

proceeding by defendant, GCR 1963, 812.2, we have nothing to review, and do not reach the merits of this issue.

MCLA 750.316; MSA 28.548 reads:

"All murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate any arson, *rape,* robbery, burglary, larceny of any kind, extortion or kidnapping, shall be murder of the first degree, and shall be punished by solitary confinement at hard labor in the state prison for life." (Emphasis added.)

As previously noted, defendant was found guilty of both premeditated murder and felony murder.

Common-law rape has been defined as "the carnal knowledge of a woman by force and against her will". *People v Crosswell,* 13 Mich 427, 432 (1865).

MCLA 750.520; MSA 28.788 provided in part:

"Any person who shall ravish and carnally know any female of the age of 16 years, or more, by force and against her will, or who shall unlawfully and carnally know and abuse any female under the full age of 16 years, shall be guilty of a felony * * * ."

The above statute has been repealed, 1974 PA 266, § 3, and in its place we have MCLA 750.520b; MSA 28.788(2) which defines criminal sexual conduct in the first degree. The definition includes sexual penetration with another person where:

"(e) The actor is armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon.
"(f) The actor causes personal injury to the victim

and force or coercion is used to accomplish sexual penetration."

This section does not necessarily require that sexual penetration be accomplished by force. It does not require the actor, armed with a weapon, to use the weapon in order to accomplish sexual penetration.

A person could be guilty of criminal sexual conduct in the first degree who would not have been guilty of rape under the prior statute.

In the present case it is not necessary to rule on this particular question but we mention the conflict to alert the Legislature and the profession of a possible conflict.

Defendant's conviction of first-degree premeditated murder and first-degree felony murder violates double jeopardy protection. Const 1963, art 1, § 15. There was only one murder and hence one crime, albeit several of the aggravating factors which make a murder first-degree murder were present in the instant case. MCLA 750.316; MSA 28.548. There was sufficient evidence of premeditation to sustain the conviction. The felony murder conviction is reversed.

Defendant's other assigned errors are either without merit or moot.

Affirmed in part, reversed in part.