PEOPLE v WILLIAMS

Docket No. 246706. Submitted January 12, 2005, at Detroit. Decided
January 27, 2005, at 9:10 a.m. Leave to appeal sought.

Joezell Williams II was convicted by a jury in the Wayne Circuit
Court of first-degree premeditated murder, MCL 750.316(1)(a);
first-degree felony murder, MCL 750.316(1)(b); larceny from the
person of another, MCL 750.357; and other felonies for the slaying
of one person and other acts. The court, Brian L. Sullivan, J.,
imposed one sentence of life imprisonment on the alternative
theories of first-degree premeditated murder and first-degree
felony murder, and other sentences of imprisonment for the
larceny and other convictions. The defendant appealed, claiming
that double jeopardy protections were violated by both the single
sentence on the two alternative theories of first-degree murder
and by sentences for both the murder and the underlying felony
offense of larceny that supported the felony-murder conviction.

The Court of Appeals held:

1. The defendant failed to support his claim of prosecutorial
misconduct relating to comments made by the prosecutor to the
jury.

2. Although double jeopardy protections are violated when a
defendant is convicted of both first-degree premeditated murder
and first-degree felony murder arising out of the death of a single
victim, a single conviction for murder based on two alternative
theories will be upheld. In this case, there were one conviction and
one sentence supported by the two theories of premeditated
murder and felony murder.

3. Because the defendant was convicted and sentenced for the
murder on the alternative bases of premeditation and felony
murder, the conviction for larceny, the felony underlying the
felony-murder theory, must be vacated consistently with *People v
Bigelow (Amended Opinion)*, 229 Mich App 218 (1998). MCR
7.215(J)(6) binds this panel to follow *Bigelow*, which has not been
reversed or modified by the Supreme Court.

Affirmed in part and vacated in part.

O'CONNELL, J., dissenting, stated that he would have validated the jury's guilty verdicts by holding that the multiple punishments for the multiple offenses of premeditated murder and larceny do not violate double jeopardy protections because the defendant was convicted on both the felony-murder theory and on the valid theory of premeditated murder. Punishing a defendant once for larceny and once for committing a premeditated murder does not violate the intent of the Legislature, so double jeopardy is not offended unless the defendant can demonstrate some fatal flaw in the premeditated theory, leaving the sentencing court to rely on the felony-murder theory alone. Striking the larceny conviction effectively nullifies the defendant's conviction for premeditated murder even though the jury verdict supported the conviction and authorized the consequent punishment.

HOMICIDE — FIRST-DEGREE MURDER — DOUBLE JEOPARDY.

It is not a violation of double jeopardy protections when the finder of fact determines that alternative theories of premeditated murder and felony murder support a single conviction and sentence for first-degree murder (MCL 750.316[1][a], [b]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Ana Quiroz*, Assistant Prosecuting Attorney, for the people.

*Neil J. Leithauser* for the defendant.

Before: SCHUETTE, P.J., and SAWYER and O'CONNELL, JJ.

SAWYER, J. Defendant was convicted by a jury of first-degree premeditated murder, MCL 750.316(1)(a); first-degree felony murder, MCL 750.316(1)(b); larceny from the person of another, MCL 750.357; mutilation of a dead body, MCL 750.160; felon in possession of a firearm, MCL 750.224f; and possession of a firearm during the commission of a felony, MCL 750.227b. He was sentenced to life in prison on alternative theories of

first-degree premeditated murder and first-degree felony murder. He was sentenced as a third-offense habitual offender, MCL 769.12, to 76 to 240 months in prison for the larceny conviction, 76 to 240 months for mutilation of a dead body, 3 to 10 years for felon in possession of a firearm, and a consecutive sentence of 2 years for his felony-firearm conviction. Defendant appeals as of right. We affirm in part and vacate in part.

A witness at trial testified that he was driving while defendant and the victim sat in the backseat of his car when he heard a "boom and the whole car lit up." The driver looked around and saw defendant shooting the victim. Defendant directed the driver to keep going. Defendant told the victim to lie down and pushed the victim's head into the car seat. He then shot the victim two more times. After directing the driver to an alley, defendant pulled the victim's body out of the car, looked through the victim's pockets, and took the victim's wallet, shoes, and marijuana. Defendant got back in the car and told the driver to take him to a gas station. After purchasing a gas can and some gas, defendant returned to the alley, poured the gas on the victim's body, and lit the victim's body afire. Later that night, defendant told his girlfriend, another witness at trial, that he had shot the victim in the face about six times. Holding his gun in his hand, defendant demonstrated how he shot the victim. The driver immediately told the police about the incident and directed them to the alley where defendant dumped the victim's body. The police found defendant sleeping near a firearm whose slugs matched those found in the driver's car and whose shells matched those found in the car and the alley.

Defendant's first issue on appeal is whether prosecutorial misconduct deprived him of a fair trial. We disagree. Defendant did not object to the alleged in-

stances of prosecutorial misconduct at trial. Therefore, we will not find error requiring reversal if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction. *People v Ackerman,* 257 Mich App 434, 449; 669 NW2d 818 (2003).

While the prosecutor vividly described defendant as "cold blooded" and the crime as "evil," she did not unfairly depict the evidence of the crime or defendant's state of mind. A prosecutor need not limit her arguments to "the blandest possible terms." *People v Matuszak,* 263 Mich App 42, 56; 687 NW2d 342 (2004). Defendant's argument that the prosecutor appealed to the jury's civic duty and emotions also fails. The prosecutor correctly defined the jury's role as a finder of fact. Her brief rhetorical reference to justice was a sobering reminder that nothing the jury could do would remedy the harm done, so the reference persuasively emphasized the gravity of the crime more than it urged a result based on civic duty. While possibly objectionable, a limiting instruction certainly would have purged the statement of any potential prejudice. *Ackerman, supra.* Regarding improper sympathy, the prosecutor did not deviate from the facts, and those facts suggested a degree of malice relevantly indicative of premeditation. Finally, the prosecutor did not improperly belittle defense counsel when she referred to him as an "expert," because the term, in context, merely drew the jury's attention to the fact that defense counsel acted as his own expert when he postulated that certain facts clearly demonstrated a scenario contrary to the testimony of the prosecution's witnesses. Therefore, defendant failed to support his claim of misconduct, and we will not reverse his conviction on that ground.

Defendant's second issue on appeal is whether his convictions and sentences violated principles of double

jeopardy. Defendant argues that his convictions and sentences for premeditated murder and felony murder, as well as his convictions and sentences for felony murder and the underlying felony, violated his double jeopardy protections. We disagree that defendant's convictions and sentences for premeditated murder and felony murder as alternative theories violated double jeopardy protections. However, we vacate his conviction and sentence for the predicate felony of larceny.

Defendant failed to object below. Therefore, we review his unpreserved claims of double jeopardy violations for plain error. *Matuszak, supra* at 47. While double jeopardy protections are violated when a defendant is convicted of both first-degree premeditated murder and first-degree felony murder arising out of the death of a single victim, we will uphold a single conviction for murder based on two alternative theories. *People v Bigelow*, 229 Mich App 218, 220-221; 581 NW2d 744 (1998). In the case at bar, the sentencing order clearly reflects that the trial court complied with *Bigelow* by indicating one conviction and sentence supported by the two theories of premeditated murder and felony murder.

We must, however, vacate his conviction and sentence on the underlying larceny offense. This case is presented in essentially the same procedural posture as *Bigelow*: the jury convicted on both the premeditation theory and the felony-murder theory. *Bigelow, supra* at 221-222, clearly concluded that, in such a case, the conviction for the underlying felony must be vacated. As our dissenting colleague, who was a member of the *Bigelow* panel, admits, *Bigelow* blindly extended the double jeopardy analysis from a case involving a conviction only under a felony-murder theory to one where the jury explicitly found both the premeditation theory

and the felony-murder theory to apply. We do not necessarily disagree with the dissent that he and his colleagues in *Bigelow* rushed to judgment on this point and that a more thoughtful analysis might lead to the conclusion that the conviction for the underlying felony need not be vacated where, as here (and in *Bigelow*), it can be determined with certainty that the jury accepted the premeditation theory (either in addition to or instead of the felony-murder theory).

But there is no authority for us to disagree with the decision of a special panel. A special panel's decision "is binding on all panels of the Court of Appeals unless reversed or modified by the Supreme Court." MCR 7.215(J)(6). Perhaps the Supreme Court will and should modify *Bigelow* in this regard. But until it does, we must follow *Bigelow* and vacate the conviction and sentence for the underlying felony.

Affirmed in part and vacated in part.

SCHUETTE, P.J., concurred.

O'CONNELL, J. (*dissenting*). I respectfully dissent.

Defendant's convictions for both first-degree murder and the "underlying felony" of larceny do not violate double jeopardy principles in this case, because defendant was not convicted merely on a felony-murder theory, but also on a separate, valid theory of premeditated murder. Punishing a defendant once for larceny and once for committing a premeditated murder does not violate the intent of the Legislature, so double jeopardy is not offended unless defendant can demonstrate some fatal flaw in the premeditated murder theory, leaving the sentencing court to rely on the felony-murder theory alone. *People v Calloway*, 469 Mich 448, 450-451; 671 NW2d 733 (2003). To strike the

larceny conviction, even at the direction of an analytically deficient precedent, effectively nullifies defendant's conviction and sentence for premeditated murder, notwithstanding the fact that a jury verdict supports the conviction and authorizes the consequent punishment. Therefore, I would validate the jury's guilty verdict by holding that the multiple punishments for the multiple offenses of premeditated murder and larceny do not violate principles of double jeopardy.

My opinion is informed by the historical development of this area of law. In *People v Sparks*, 82 Mich App 44, 53; 266 NW2d 661 (1978), we held that a defendant may not face multiple convictions or sentences based on the different varieties of murder when the defendant killed a single victim. While this made sense, it left prosecutors and courts in a quandary. If the prosecution pursued only a theory of premeditation, despite the fact that a felony-murder theory also applied, it risked the jury finding that the defendant, while certainly the killer, did not premeditate the killing. Because the reverse hypothetical situation was also true, it was hazardous to proceed on any single theory. Prosecutors wisely proceeded on both theories, usually in separate counts, despite the inevitable elimination of one of them. This left to judges the difficult question: Which valid conviction should be forever vacated to appease double jeopardy? *Sparks* reversed the felony-murder conviction, but only after finding that the facts adequately supported premeditation. *Id.* at 53. This became the trend. See *People v Passeno*, 195 Mich App 91, 95-96; 489 NW2d 152 (1992), overruled by *People v Bigelow*, 229 Mich App 218, 222; 581 NW2d 744 (1998).

In *People v Wilder*, 411 Mich 328, 342; 308 NW2d 112 (1981), our Supreme Court held that separate convic-

tions for felony murder and the underlying felony violated principles of double jeopardy. Later, in *People v Robideau*, 419 Mich 458, 485; 355 NW2d 592 (1984), our Supreme Court distilled multiple-punishment double jeopardy down to the relatively simple concept of legislative intent. If the Legislature did not intend to punish a defendant separately and cumulatively for two different crimes, then the role of the judiciary was to sentence the defendant accordingly. *Id.*

In the meantime, courts eventually recognized the risk of simply dismissing a valid, but seemingly superfluous, murder conviction to satisfy double jeopardy mandates. The failure of the remaining conviction to withstand an appellate challenge could mean that an individual validly found guilty of the discarded variety of first-degree murder would go free. To insulate our system from such an injustice, we extinguished this possibility in the conflict-panel case of *Bigelow, supra* at 222, holding that the proper procedure was to allow a prosecutor to convict a defendant of first-degree murder with alternative supporting theories. Under this approach, a defendant's first-degree murder conviction was undergirded by separate and independent grounds, and a defendant could not obtain reversal of the conviction on the happenstance that a court accidentally vacated the superior, valid theory to placate double jeopardy. To gain a reversal of the murder conviction under the new approach, the defendant needed to demonstrate that neither theory sustaining his murder conviction was valid.

Unfortunately, *Bigelow* also held, without the benefit of any substantive legal analysis, that the felony underlying a defendant's felony-murder conviction must be vacated to satisfy the requirements of multiple-punishment double jeopardy. *Id.* at 221-222. *Bigelow*

cited *People v Gimotty*, 216 Mich App 254, 259-260; 549 NW2d 39 (1996), a felony-murder case that did not deal with a conviction supported by the separate theory of premeditation. It is clear to me from reading the *Bigelow* opinion that the members of the conflict panel, myself included, applied *Gimotty* as binding precedent to a situation where it simply did not apply. Because I can find no case that analyzes this issue, I would treat it as an issue of first impression and hold that principles of double jeopardy are not offended as long as an alternative theory adequately supports the conviction, independently satisfies double jeopardy review, and withstands appellate scrutiny in all other respects.

This approach would validate the jury's finding that defendant premeditated the murder *and* committed a larceny. Similarly, it would not require us to choose between vacating defendant's valid felony-murder theory or vacating the valid conviction for the underlying felony, because it recognizes that defendant has failed to propose any substantial challenge to the validity of either verdict. The felony-murder theory stands merely as an alternative ground for affirming the first-degree murder conviction, and the theory alone does not receive a punishment (exclusive of the premeditation theory) that would require us to question whether the punishment assigned was more than the Legislature intended. Without multiple punishments stemming particularly and exclusively from defendant's convictions for larceny and felony murder, we do not need to vacate the felony-murder theory. Rather, we may wisely preserve it for its original purpose: to uphold defendant's valid conviction for first-degree murder should the premeditation theory fail. This, I think, upholds the paramount legislative intent of having the criminal statutes enforced.

The majority apparently assumes that the Legislature intended for us to trim off and discard a valid conviction and sentence whenever a formulaic application of judicial precedent makes paring the convictions easier than rooting out and applying double jeopardy's fundamental principles. I would rather assume that the Legislature intended to punish every violation of every law assembled and enumerated in the criminal code, including the meager larceny conviction at issue here. Because I do not perceive any reason why the Legislature would want a sentencing judge to refrain from punishing a larceny merely because the judge has already sentenced the defendant for committing premeditated murder, I would affirm the separate convictions and the multiple punishments those convictions fairly garnered.

The majority's holding also perpetuates the existence of another senseless quandary—if the prosecution proceeds on two probably valid, but vulnerable, theories of murder, does it risk having its entire case disposed of piecemeal on appeal, including its airtight conviction on the "underlying" felony of armed robbery or, perhaps, aggravated criminal sexual conduct.[1] Absent a compelling directive from the Legislature, I would not require prosecutors and sentencing courts to jettison valid charges and convictions to protect their cases and decisions from potentially irreversible erosion.[2]

---

[1] For those who would argue that conviction of an underlying felony is certainly superfluous to a murder conviction, I cite *Wilder*, in which the underlying felony was the only conviction left standing after the Supreme Court reversed the defendant's felony-murder conviction. As explained in *Bigelow, supra* at 220 n 1, the perfunctory reversal of a valid conviction to satisfy double jeopardy requirements unnecessarily risks the irremediable disposal of the only valid conviction.

[2] I must note that the line of reasoning adopted by the majority has the ironic effect of decreasing the amount of punishment received by the

In sum, defendant argues, and the majority holds, that the underlying larceny conviction must be dismissed because the Legislature did not intend to punish him for both the underlying larceny and felony murder. Of course, neither defendant nor the majority explains how that lack of intent prevents us from punishing him for committing a larceny and a *premeditated* murder. I would hold that because defendant has been convicted under each theory, he must first demonstrate some fatal flaw in the premeditation theory before advancing his double jeopardy claim. He has not. Therefore, defendant's separate sentences for first-degree premeditated murder and larceny remain valid, and I would affirm in all respects.

---

most dangerous and contemptible class of criminals imaginable—those found guilty of planning to murder their victim in the course of committing another serious crime. As individuals charged with dispensing justice, we should carefully review our actions when they lead to such anomalous results.