# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTHONY DEAN JONES,

        Defendant-Appellant.


UNPUBLISHED
January 16, 2018

No. 333572
Wayne Circuit Court
LC No. 15-005730-01-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTHONY DEAN JONES,

        Defendant-Appellant.

No. 335157
Wayne Circuit Court
LC No. 15-005721-01-FH

---

Before: TALBOT, C.J., and MURRAY and O'BRIEN, JJ.

PER CURIAM.

Defendant, Anthony Dean Jones, was charged in four separate cases involving multiple offenses against Leasha Foreman and her three minor daughters, AF, LD, and MD, and the cases were consolidated for trial.[1] In lower court case number 15-005730-01-FC, the jury found Jones guilty of two counts of second-degree criminal sexual conduct (CSC-II)[2] based on sexual contact with then 10-year-old AF. In LC No. 15-005721-01-FH, the jury found Jones guilty of two counts of third-degree criminal sexual conduct (CSC-III)[3] and one count of fourth-degree

---

[1] Jones was acquitted of the charges stemming from the two cases involving Foreman and LD. The jury's verdict in those cases is not before this Court on appeal.

[2] MCL 750.520c(1)(a) (sexual contact with a person under the age of 13).

[3] MCL 750.520d(1)(a) (sexual penetration of a person between the ages of 13 and 16).

-1-

criminal sexual conduct (CSC-IV)[4] based on sexual abuse of MD, who was 13 or 14 years old at the time.[5] He appeals as of right. We affirm.

## I. WAIVER OF THE RIGHT TO COUNSEL

Jones first argues that the trial court erred by allowing him to represent himself at trial without adequately advising him of the risks and disadvantages of self-representation, thereby preventing him from making a knowing and voluntary waiver of his right to counsel. "This Court reviews de novo whether a defendant waived his Sixth Amendment right to counsel, but reviews for clear error any factual findings underlying the trial court's decision."[6] We must be cognizant of the trial court's superior opportunity to assess issues of credibility and refrain from substituting our judgment for that of the trial court on matters involving factual determinations.[7] However, when the issue is not raised below and is therefore unpreserved, we review for plain error affecting substantial rights.[8]

While the Sixth Amendment affords defendants the right to counsel, the Constitution does not force a lawyer upon a defendant and a defendant may waive representation in a criminal trial in favor of self-representation.[9] "Waiver of the right to counsel . . . must be a 'knowing, intelligent ac[t] done with sufficient awareness of the relevant circumstances.' "[10] "A waiver is sufficient if the defendant 'knows what he is doing and his choice is made with eyes open.' "[11] As our Supreme Court observed in *People v Williams*,

> The right of self-representation under Michigan law is secured by Const 1963, art 1, § 13 and by statute, MCL 763.1. In [*People v*] *Anderson*, [398 Mich 361,] 367-368[;] 247 NW2d 857 [(1976)], this Court held that a trial court must make three findings before granting a defendant's waiver request. First, the waiver request must be unequivocal. Second, the trial court must be satisfied that the waiver is knowingly, intelligently, and voluntarily made. To this end, the trial court should inform the defendant of potential risks. Third, the trial court must be

---

[4] MCL 750.520e(1)(a) (sexual conduct with a person between the ages of 13 and 16 by an actor five or more years older than the victim).

[5] Jones was also charged in LC No. 15-005721-01-FH with first-degree home invasion, MCL 750.110a(2), but that count was dismissed at trial on Jones's motion for a directed verdict.

[6] *People v Campbell*, 316 Mich App 279, 283; 894 NW2d 72 (2016).

[7] *People v Williams*, 470 Mich 634, 640-641; 683 NW2d 597 (2004).

[8] *Campbell*, 316 Mich App at 283.

[9] *Williams*, 470 Mich at 641.

[10] *Id*. at 641-642 (alterations in original), quoting *Brady v United States*, 397 US 742, 748; 90 S Ct 1463; 25 L Ed 2d 747 (1970).

[11] *Williams*, 470 Mich at 642, quoting *Adams v United States ex rel McCann*, 317 US 269, 279; 63 S Ct 236; 87 L Ed 268 (1942).

satisfied that the defendant will not disrupt, unduly inconvenience, and burden the court or the administration of court business.[12]

MCR 6.005(D) addresses the procedures a trial court must follow when reviewing a defendant's request for self-representation:

> **(D) Appointment or Waiver of a Lawyer**. If the court determines that the defendant is financially unable to retain a lawyer, it must promptly appoint a lawyer and promptly notify the lawyer of the appointment. The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first
>
> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and
>
> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

Trial courts must substantially comply with the requirements in *Anderson* and MCR 6.005(D).[13] "Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures."[14]

The record does not support Jones's appellate argument that the trial court failed to adequately advise him of the dangers and disadvantages of self-representation. After jury selection began, Jones's appointed counsel advised the court that Jones did not believe that she was competent to handle the trial and that Jones wanted to represent himself. Counsel further advised the court that she had "warned him of the dangers of that position," but Jones was "adamant that he wants me only at the table for advice." After being placed under oath, Jones agreed that he did not want defense counsel to represent him and informed the court that he wanted "to proceed in pro se." The court proceeded with jury selection with Jones representing himself and with appointed counsel acting only in an advisory capacity. Later that day, however, the court revisited Jones's request for self-representation. This time, the court questioned Jones more thoroughly, advising him of the potential penalties he was facing if convicted, including a possible sentence of life imprisonment without parole. The court also cautioned Jones that, given his lack of legal training, there may be issues he would not be prepared to argue, which

---

[12] *Williams*, 470 Mich at 642 (footnotes omitted).

[13] *People v Adkins (After Remand)*, 452 Mich 702, 726; 551 NW2d 108 (1996), overruled in part on other grounds in *Williams*, 470 Mich at 641 n 7.

[14] *Adkins (After Remand)*, 452 Mich at 726-727.

Jones acknowledged he understood. The court observed that it had not properly advised Jones when the issue first arose before allowing him to proceed *in propria persona* with jury selection; therefore, it decided to release the then existing jury panel and begin the jury selection process anew.

The next day, before beginning the second jury selection process, the court questioned Jones again. After placing Jones under oath, the court asked Jones whether he still wanted to represent himself "[d]espite the fact that you don't have any legal training," and Jones reaffirmed his desire for self-representation. The court again reminded Jones of the penalties he was facing if convicted, and Jones confirmed that he understood the possible penalties. The court also advised Jones that he would have a lawyer available to consult with if needed. During trial, the court periodically reminded Jones of the penalties he was facing and verified that he still wanted to represent himself.

The trial court stated on the record that it believed it had made Jones aware of the dangers and disadvantages of self-representation, and explicitly found that Jones's waiver of counsel was "knowingly, voluntarily, understanding[,] and intelligently made." While more thorough questioning of Jones in this regard may have been preferable, we cannot say that the court's actual questioning failed to substantially comply with the requirements of *Anderson* and MCR 6.005. The questioning of a defendant regarding the risks and disadvantages of self-representation does not require any specific colloquy.[15] Jones was reminded more than once that he did not have legal training and may not be prepared to argue certain issues and that he was facing substantial penalties if convicted, including a potential sentence of life imprisonment without parole. Moreover, an evaluation of Jones's understanding of the risks and disadvantages of self-representation should be examined in light of the whole record. The record discloses that the possibility of self-representation was discussed at an earlier hearing, and Jones was warned then that, due to his lack of legal training, he was not qualified to make decisions regarding what motions an attorney should file. When Jones initially expressed his desire to represent himself, defense counsel informed the court that she too had warned Jones of the dangers of self-representation. Despite these repeated warnings, Jones continuously confirmed that he wanted to represent himself. The court also gave Jones multiple opportunities to reconsider his position during trial, and he consistently declined to do so. On this record, we agree with the trial court's conclusion that Jones's decision to represent himself was knowingly, intelligently, and voluntarily made. Accordingly, the trial court did not err by accepting Jones's waiver of counsel and allowing him to represent himself at trial

## II. CROSS-EXAMINATION OF THE MINOR COMPLAINANTS

Next, Jones argues that the trial court violated his constitutional right to self-representation when it prohibited him from personally cross-examining the child complainants and required the examination to instead be conducted by standby counsel. A trial court's

---

[15] *Id*. at 727 ("The nonformalistic nature of a substantial compliance rule affords the protection of a strict compliance rule with far less of the problems associated with requiring courts to engage in a word-for-word litany approach.").

limitations on cross-examination are reviewed for an abuse of discretion.[16] Jones also argues that the trial court's limitations on cross-examination violated his constitutional rights. Constitutional issues are questions of law that we review de novo.[17]

After the trial court accepted Jones's waiver of counsel and permitted him to represent himself at trial, the trial court announced that it would have to decide whether Jones would be permitted to personally cross-examine the child complainants, each of whom suffered from cognitive impairments. The next day, relying on this Court's decision in *People v Daniels*,[18] the trial court ruled that Jones would not be permitted to personally cross-examine the two youngest complainants, AF and LD, and that the cross-examination of these witnesses would be conducted by standby counsel, using questions submitted by Jones. Although the court initially declined to apply these limitations to Jones's cross-examination of MD, who was 15 or 16 years old at the time of trial, it later extended its ruling to include MD after receiving testimony on a separate record that MD had intellectual and developmental deficits that placed her below the level of a 12-year-old.

In *Daniels*, this Court held that a trial court did not abuse its discretion when it prohibited a defendant who was exercising his right to self-representation from personally questioning a child victim of sexual abuse.[19] We explained that "[t]he right of cross-examination . . . may bow to accommodate other legitimate interests of the trial process or of society,"[20] and, citing MRE 611(a), concluded that "[i]n its management of the self-representing defendant's cross-examination of witnesses, the trial court, as in all instances, may limit the defendant's cross-examination to protect the witness from harassment or undue embarrassment."[21] This is particularly true in sexual assault cases involving minor complainants.[22] In exercising its discretion to impose limitations upon cross-examination under these circumstances, "[t]he court must balance the criminal defendant's right to self-representation with the State's important interest in protecting child sexual abuse victims from further trauma."[23] Thus, in *Daniels*, we approved of the trial court's decision to prevent the defendant from personally cross-examining the minor complainants where there was considerable evidence that it would cause the complainants significant trauma and emotional distress, and the court protected defendant's

---

[16] *People v Daniels*, 311 Mich App 257, 265; 874 NW2d 732 (2015).

[17] *Id*.

[18] *Daniels*, 311 Mich App 257.

[19] *Id*. at 268-271.

[20] *Id*. at 268 (quotation marks and citation omitted) (alterations in original).

[21] *Id*. (quotation marks omitted).

[22] *Id*. at 269.

[23] *Id*. (quotation marks and citation omitted).

rights by allowing defendant to formulate the questions to be asked of the complainants by his advisory attorney.[24]

Like the defendant in *Daniels*, Jones contends that the trial court's restrictions on his cross-examination of the child witnesses violated his constitutional right to self-representation. We disagree. Preliminarily, Jones's argument is moot as applied to AF because she ultimately did not testify at trial.[25]

LD was 13 years old at the time of trial. Like the other children, however, she was cognitively impaired and attended special education classes. LD testified that Jones sexually assaultal her in June 2015, and she also indicated that he had threatened to harm her family if she told anyone what he did to her. According to Foreman, LD had difficulty sleeping at home since that time; she instead waited until school to sleep or slept on a couch in the front room. These facts demonstrate that LD was a vulnerable witness who would likely suffer additional emotional distress if Jones was allowed to personally examine her at trial. In light of LD's undisputed developmental delays and the evidence of her emotional trauma stemming from allegations against Jones, the trial court did not abuse its discretion by prohibiting Jones from personally examining her at trial to protect her from further trauma.[26]

As for MD, she was 15 or 16 years old at the time of trial. However, she too was developmentally and cognitively impaired. Testimony from a separate record indicated that, academically, MD was functioning below a third- or fourth-grade level, and her reading was at a first-grade level. She lacked the ability to make commonsense decisions, and her decision-making skills were below the level of a 12-year-old. Considering MD's cognitive and developmental deficits, the trial court had a factual basis for concluding that she too was a vulnerable witness who was likely to be adversely impacted by being questioned directly by Jones, the person she claimed had sexually abused her. Therefore, the trial court did not abuse its discretion by extending its ruling to MD and requiring standby counsel to conduct the cross-examination of this witness.

Furthermore, the restrictions imposed by the court were narrowly designed to protect the state's interest in protecting sexual abuse victims from further trauma, without unduly infringing on Jones's right of self-representation or to control his own defense. Although Jones was barred

---

[24] *Id*. at 270-271.

[25] The trial court declared AF an unavailable witness when it became apparent that she was too emotionally traumatized to testify at trial, and her preliminary examination testimony was admitted in lieu of her live testimony. Jones does not challenge that ruling on appeal.

[26] Moreover, we note that the jury acquitted Jones of all charges involving LD. Given Jones's acquittal of those charges, any error in prohibiting him from personally cross-examining LD would also qualify as harmless beyond a reasonable doubt. See *People v Anderson (After Remand)*, 446 Mich 392, 406; 521 NW2d 538 (1994) (explaining that harmless error analysis in the context of a nonstructural error involving constitutional rights requires determination that error was harmless beyond a reasonable doubt).

from questioning the minor complainants directly, the court allowed him to draft the questions to be asked, to decide if standby counsel was permitted to ask any additional questions, and to direct standby counsel as to when to cease her cross-examination. Additionally, before MD testified, the court gave Jones and standby counsel an opportunity to formulate a strategy regarding the cross-examination, to confer regarding Jones's proposed questions, and to discuss any questions that might not be appropriate. With respect to those questions standby counsel believed were improper, counsel was permitted to seek preliminary rulings from the court. These procedures allowed Jones to control the direction of the cross-examination and thereby preserve his right of self-representation. Accordingly, the trial court did not abuse its discretion or violate Jones's constitutional rights by prohibiting him from personally examining the child witnesses.[27]

## III. PROSECUTORIAL MISCONDUCT

Lastly, Jones argues that he was denied a fair trial by the prosecutor's repeated use of the terms "victim" or "victims" when referring to the complainants in her opening statement, closing argument, and examination of witnesses. Jones concedes that there was no objection to the prosecutor's use of these terms at trial, leaving this issue unpreserved. Review of an unpreserved issue "is limited to whether plain error affecting substantial rights occurred."[28] An error is plain if it is clear or obvious, and an error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings.[29] This Court will not reverse if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction from the trial court.[30]

Claims of prosecutorial misconduct are decided case by case and the challenged comments must be read in context to determine if the defendant was denied a fair trial.[31] A prosecutor is afforded great latitude in closing argument.[32] The prosecutor is permitted to argue the evidence and reasonable inferences arising from the evidence in support of the prosecution's theory of the case.[33] Although prosecutors have a duty to see that a defendant receives a fair trial, and they must refrain from making prejudicial remarks,[34] they may use "hard language" when the evidence supports it and are not required to phrase their arguments in the blandest of

---

[27] *Daniels*, 311 Mich App at 271.

[28] *People v Abraham*, 256 Mich App 265, 274-275; 662 NW2d 836 (2003).

[29] *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).

[30] *People v Williams*, 265 Mich App 68, 71; 692 NW2d 722 (2005), aff'd 475 Mich 101 (2006).

[31] *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995); *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996).

[32] *Bahoda*, 448 Mich at 282.

[33] *Id*.

[34] *Id.* at 283.

terms.[35]  It is improper for a prosecutor to express her personal belief regarding a witness's credibility, or to vouch for the credibility of a witness by suggesting that she has some special knowledge about the witness's truthfulness.[36]

Viewed in context, the prosecutor's use of the terms "victim" or "victims" did not constitute plain error.  The prosecutor used the terms in their generic sense to describe the persons who were alleged to have been harmed by Jones's conduct.  None of the usages were made in a context of vouching for a complainant's veracity by suggesting that the prosecutor had some special knowledge that the witnesses were credible or that the crimes occurred.  The comments similarly did not infringe on Jones's presumption of innocence.

To the extent there was any concern that a jury might attach a prejudicial connotation to the use of these terms, a cautionary instruction could have alleviated any perceived prejudice upon request.  In any event, even without objections, the trial court instructed the jury that (1) it "must not let sympathy or prejudice influence your decision"; (2) Jones was presumed innocent throughout the trial and entitled to a not guilty verdict unless the jury determined his guilt beyond a reasonable doubt; and (3) the statements and arguments of the attorneys were not evidence.  These instructions were sufficient to protect Jones's substantial rights.  Indeed, the fact that the jury acquitted Jones of all charges involving two of the alleged "victims" further indicates that the prosecutor's use of that term had no effect on the jury's verdict.  On this basis, Jones has not shown either a plain error or any effect on his substantial rights resulting from the prosecutor's use of the term "victim" in reference to the complainants.  Therefore, Jones is not entitled to appellate relief.

Affirmed.

/s/ Michael J. Talbot
/s/ Christopher M. Murray
/s/ Colleen A. O'Brien

---

[35] *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996).

[36] *Bahoda*, 448 Mich at 276; *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004).