# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

CARLOS THOMPSON,

       Defendant-Appellant.

UNPUBLISHED
December 20, 2018

No. 339103
Macomb Circuit Court
LC No. 2016-001021-FC

Before: CAVANAGH, P.J., and SERVITTO and CAMERON, JJ.

PER CURIAM.

Defendant appeals his jury trial convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (victim under 13 years of age, defendant 17 years of age or older). On appeal, defendant challenges the deadlock jury instructions, and raises claims of ineffective assistance of counsel and prosecutorial error.[1] We affirm.

On two occasions, defendant sexually assaulted his girlfriend's then seven-year-old daughter. On those occasions, defendant's girlfriend left her two children in defendant's care. Defendant would order the one child to stand in the corner of the living room while he sexually assaulted the other child in the second-floor bedroom. Eventually, the victim told her aunt about the sexual assaults. Although a physical examination did not reveal any sexual-related trauma, defendant was arrested and charged with two counts of CSC-I following a forensic interview.

## I. JURY INSTRUCTIONS

Defendant first argues that the trial court improperly pressured the jury into rendering a guilty verdict by providing a non-standard jury instruction regarding jury deadlock that included

---

[1] This Court has previously noted that, although "prosecutorial misconduct" is often used to describe any error made by the prosecution, "claims of inadvertent error by the prosecution are better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *People v Jackson*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015) (quotation marks and citation omitted).

coercive language that defendant claims forced the jury to reach a unanimous verdict. We disagree.

In general, "[t]his Court reviews de novo claims of instructional error." *People v Rosa*, 322 Mich App 726, 738 n 6; 913 NW2d 392 (2018). However, defendant failed to preserve this issue on appeal by objecting to the trial court's reading of the jury instruction. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). Unpreserved issues are reviewed by this Court "for plain error affecting his substantial rights." *People v Perry*, 317 Mich App 589, 600; 895 NW2d 216 (2016). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. However, "[e]ven if defendant could satisfy these requirements, reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Kowalski*, 489 Mich at 505-506 (quotation marks and citation omitted).

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Everett*, 318 Mich App 511, 527; 899 NW2d 94 (2017) (quotation marks and citation omitted). Thus, the trial court must include "all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence" in its reading of the jury instructions. *Id*. (quotation marks and citation omitted). However, the trial court is not required to give perfect instructions; rather, a jury instruction will be considered sufficient if it "fairly presented the issues to be tried and adequately protected the defendant's rights." *Kowalski*, 489 Mich at 501-502.

Defendant contends that the trial court improperly included coercive language in its reading of a supplemental jury instruction regarding deadlocked juries. The jury instruction at issue provides:

> (1) You have returned from deliberations, indicating that you believe you cannot reach a verdict. I am going to ask you to please return to the jury room and resume your deliberations in the hope that after further discussion you will be able to reach a verdict. As you deliberate, please keep in mind the guidelines I gave you earlier.

> (2) Remember, it is your duty to consult with your fellow jurors and try to reach agreement, if you can do so without violating your own judgment. To return a verdict, you must all agree, and the verdict must represent the judgment of each of you.

> (3) As you deliberate, you should carefully and seriously consider the views of your fellow jurors. Talk things over in a spirit of fairness and frankness.

(4) Naturally, there will be differences of opinion. You should each not only express your opinion but also give the facts and the reasons on which you base it. By reasoning the matter out, jurors can often reach agreement.

(5) If you think it would be helpful, you may submit to the bailiff a written list of the issues that are dividing or confusing you. It will then be submitted to me. I will attempt to clarify or amplify the instructions in order to assist you in your further deliberations.

(6) When you continue your deliberations, do not hesitate to rethink your own views and change your opinion if you decide it was wrong.

(7) However, none of you should give up your honest beliefs about the weight or effect of the evidence only because of what your fellow jurors think or only for the sake of reaching agreement. [M Crim JI 3.12.]

When the jury first informed the trial court that it could not reach a verdict, the trial court read the jury instruction on deadlocked juries verbatim. However, when the jury informed the trial court the next day that it still could not reach a verdict, the trial court deviated slightly from the standard instruction, stating:

I really need you to go back and re-go over everything you've got. Maybe look at the exhibits again. Look at your notes again. Discuss the testimony again. This case is very important to both sides and it's really important that, if at all possible, the matter does get resolved by this trial as opposed to another. Remember, it's your duty, again, to consult with each other, to try and reach agreement as long as you can do so without giving up your own judgment. To return a verdict, you must all agree. It must represent the individual judgment of each of you. As you deliberate you should carefully and seriously consider the views of your fellow jurors. Talk things over in the spirit of fairness and frankness. Naturally, there are going to be differences of opinion. You should each not only express your opinion, but give the facts and the reasons on which you base it . . .

* * *

When you continue deliberations do not hesitate to re-think your own views and change your opinions if you're wrong. None of you should give up your honest opinion, I'm not asking that. I'm just asking you to carefully consider everyone else's and see if you can find merit or maybe point out where the merit might be lacking, and maybe the other person will change their mind. But don't give up your own opinion just for the sake of reaching a verdict. But it is very important that you spend some extra time to try and reach agreement and see what you can agree upon. I know sometimes the makeup of the jury could switch. I had a jury switch up the foreperson. I don't know, unfortunately, I have not sat on a jury before so I'm not really sure how it's working in there, but just other things to consider as well. This is really important to both sides and we ask that you please

go back and reconsider and maybe look everything over maybe in a different light.

On the third day, the trial court again read the standard deadlock jury instruction to the jury verbatim, and defendant does not raise any issues related to that reading of the standard jury instruction. However, with regard to the non-standard deadlock jury instruction read to the jury on the second day of trial, defendant argues that the trial court's repeated assertions that it was "really important" and "very important" for the jury to reach a verdict constituted a substantial departure from M Crim JI 3.12, and that these comments coerced the jury into rendering a verdict.

The Michigan Supreme Court has previously held that " '[a]ny substantial departure' " from the text of a jury instruction as adopted by the American Bar Association (ABA) can constitute grounds for finding that the trial court committed error requiring reversal. *People v Pollick*, 448 Mich 376, 382; 531 NW2d 159 (1995) (citation omitted). A jury instruction is considered to have substantially departed from the standard text if the trial court's verbal departure could "cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement[.]" *Id*. at 384. An example of a jury instruction on deadlock that departs from the standard instruction to the extent that reversal is required is one "that calls for the jury, as part of its civic duty, to reach a unanimous verdict and which contains the message that the failure to reach a verdict constitutes a failure of purpose . . . ." *Id*. at 385. Typically, " '[t]he optimal instruction will generate discussion directed towards the resolution of the case but will avoid forcing a decision.' " *Id*. at 384 (citation omitted).

When taken in context, the trial court's reading of the non-standard jury instruction did not substantially depart from the text of M Crim JI 3.12 to the extent that reversal is necessary. The trial court read M Crim JI 3.12 in its entirety to the jury twice, including language that instructed the jurors to consult with each other and carefully consider each other's opinions. The trial court also instructed the jurors that none of them should abandon their opinion "for the sake of reaching a verdict," which negates defendant's claim that the trial court was coercing the jury into reaching a verdict. Additionally, at no point did the trial court suggest to the jury that the failure to reach a verdict would mean that the jurors had failed at their purpose. *Id*. at 385. The trial court also informed the jury each time it read the deadlock instruction that the jury was welcome to send a note asking for clarification of the facts or law of the case. The trial court did not directly or specifically demand that it reach a verdict, but rather asked the jury to continue to deliberate in an effort to resolve the case.

Overall, the trial court's non-standard jury instruction was sufficient and did not result in error, despite the fact that it was not a verbatim reading of M Crim JI 3.12. The trial court's instruction was consistent with the text and spirit of the standard jury instruction. At no point did the trial court's comments contain the type of coercive language necessary to result in a reversal of defendant's convictions. The trial court's additional comments instructed the jury to make a concerted effort to reach a verdict, but also to encourage them to remain open-minded and engaged in the jury deliberations. Thus, the non-standard instruction as provided by the trial court did not constitute a substantial departure from the standard jury instruction.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that he was denied the effective assistance of counsel where counsel failed to object to the trial court's reading of the non-standard deadlock jury instruction. We disagree.

To preserve a claim of ineffective assistance of counsel, a defendant must move for a new trial or a *Ginther*[2] hearing in the trial court. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Defendant did not move for a new trial or a *Ginther* hearing in the trial court. The issue is thus unpreserved, and this Court's review is "limited to mistakes apparent on the record." *Id*. When examining a defendant's claim of ineffective assistance of counsel, "this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Dixon-Bey*, 321 Mich App 490, 515; 909 NW2d 458 (2017) (quotation marks and citation omitted).

To establish a claim of ineffective assistance of counsel, a defendant is required to demonstrate "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Defense counsel is presumed to be effective. *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007). Thus, defendant is required to "overcome a strong presumption that counsel's performance constituted sound trial strategy," *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003).

As previously discussed, defendant failed to show that the trial court erred by reading a non-standard deadlock jury instruction that also included commentary outside of the verbatim text of the standard jury instruction, M Crim JI 3.12. The non-standard jury instruction was not coercive, and the trial court did not substantially depart from the standard jury instruction under M Crim JI 3.12. Nevertheless, this Court observes that "a failure to satisfy the plain-error test will not, without more, foreclose a defendant's claim of ineffective assistance of trial counsel." *People v Randolph*, 502 Mich 1, 5; 917 NW2d 249 (2018). Defendant has failed to demonstrate that defense counsel was required to object to the trial court's reading of the deadlock jury instruction because he has failed to properly establish that the trial court's reading of the instruction substantially departed from the text of M Crim JI 3.12. Consequently, it cannot be argued that defense counsel's performance fell below an objective standard of reasonableness. Since the trial court's reading of the deadlock jury instruction did not substantially depart from the standard text of M Crim JI 3.12, defendant cannot properly show that the outcome of the case would have been different if defense counsel had objected. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Accordingly, defendant has failed to show that he was denied the effective assistance of counsel.

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

### III. PROSECUTORIAL ERROR

Defendant argues that the prosecutor committed prosecutorial error during her closing argument when she detailed her experience as a prosecutor and suggested that a guilty verdict would help the victim heal from the sexual assault. We agree that the prosecutor's comments were improper, but reversal is not required because the timely inclusion of jury instructions regarding the lawyers' statements and arguments remedied any prejudicial effect.

Generally, "[i]ssues of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). However, defendant failed to properly preserve this issue because he failed to contemporaneously object to the prosecutor's statements at trial and request a curative instruction. *Id*. Thus, "[b]ecause the challenged prosecutorial statements in this case were not preserved by contemporaneous objections *and* requests for curative instructions, appellate review is for outcome-determinative, plain error." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008) (emphasis added).

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A defendant's right to a fair trial "can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *Id*. at 63-64. "To determine if a prosecutor's comments were improper, we evaluate the prosecutor's remarks in context, in light of defense counsel's arguments and the relationship of these comments to the admitted evidence." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). Defendant cites to an excerpt from the prosecutor's closing argument, in which the prosecutor stated as follows:

> *Ms. Hengeveld* [the prosecution]: I have been a prosecutor for almost 14 years and in the last few years these are the only kinds of cases that I prosecute.

> *Ms. Erwin* [defense counsel]: Objection, your honor. Moving into something personal.

> *The Court*: Well, we don't know where she's going, but I'll caution you. Go ahead.

> *Ms. Hengeveld*: Whether it's this kind of case or whether it's other cases that I prosecute, I have determined that in every case a victim loses something, whether it's money, whether it's property, whether it is time healing from wounds, or a loved one.

> These cases are different. In these cases the victim loses a sense of trust. They lose a sense of security. They lose a sense of themselves. These are not cases that happen where they can be witnessed by somebody. These are not the kinds of cases that are disclosed right away, and oftentimes they're not. These are

the kind of cases that happen when no one is around to protect the victim. These are the kind of cases that happen between closed doors and behind closed doors, and they're done by the assailant in a way that discourages disclosure by the victim.

A guilty verdict by you will not return [the victim] to her former self. This is going to be with her forever. And seemingly, she might go along in life and be fine for awhile [sic], and all of a sudden she hits a wall and all of her experiences at the hands of the defendant are going to come back. So, you finding the defendant guilty isn't going to fix that for her, but it will put her on the path to being able to heal and move forward from this atrocious thing that has happened to her as a seven-year-old little girl.

Defendant argues that the prosecutor used the prestige of her office as a prosecutor to bolster her closing argument. Defendant further argues that the prosecutor improperly appealed to the jury's sympathies by arguing that a guilty verdict would allow the victim to heal from the sexual assault. Defendant correctly argues that a prosecutor may not improperly invoke "the prestige of the office" or use "the prestige of the prosecutor's office to inject personal opinion" into an argument. *People v Matuszak*, 263 Mich App 42, 55; 687 NW2d 342 (2004). Additionally, "a prosecutor may not argue facts not in evidence or mischaracterize the evidence presented," and "[a]ppeals to the jury to sympathize with the victim constitute improper argument." *People v Watson*, 245 Mich App 572, 588, 591; 629 NW2d 411 (2001).

When taken in context, the prosecutor's act of mentioning her personal experience as a prosecutor immediately before a series of generalizations about the nature of sexual assault cases constitute impermissible prosecutorial conduct. The prosecutor's discussion of sexual assault cases being "different," from other types of cases, and her statement that sexual assault victims lose "a sense of trust . . . a sense of security . . . a sense of themselves," while perhaps true, were ultimately based on the prosecutor's personal experience and not facts in evidence. The prosecutor's remark that a guilty verdict would "put [the victim] on the path to being able to heal and move forward from this atrocious thing that has happened to her" was also not a factual statement based on the evidence. Further, this excerpt of the prosecutor's closing argument paired an improper reference to the prosecutor's personal experience with an improper appeal to the juror's sympathies, and as such, constituted prosecutorial error.

However, this Court "will not find error requiring reversal if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction." *People v Williams*, 265 Mich App 68, 71; 692 NW2d 722 (2005). The prosecutor's comments were only one portion of an otherwise lengthy and factually based closing argument, and the trial court also instructed the jury that "[t]he lawyers' statements and arguments are not evidence. They're only meant to help you understand the evidence and each side's legal theories. You should only accept the things the lawyers say that are supported by the evidence . . . ." Any prejudicial effect of the prosecutor's statement was cured by the inclusion of this instruction. Additionally, defendant was convicted of two counts of CSC-I, but was acquitted of an additional two counts, which indicates that the jury weighed the evidence and made its own determination regarding defendant's guilt without considering the prosecutor's remarks during closing argument. Thus, although the statements made by the prosecutor may have constituted prosecutorial error, this

Court should not reverse defendant's convictions and sentences because the potential prejudicial effect of the statements was cured by the trial court.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto
/s/ Thomas C. Cameron