*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOSE ANGELCANDELARI PENA,

Defendant-Appellant.

UNPUBLISHED
April 23, 2019

No. 341738
Oakland Circuit Court
LC No. 2017-262343-FH

Before: MURRAY, C.J., and SAWYER and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of one count of second-degree criminal sexual conduct ("CSC-II"), MCL 750.520c(1)(b)(*ii*) (victim at least 13 years old but less than 16 years old and defendant is related to the victim by blood). The trial court sentenced defendant to 38 to 360 months' imprisonment. We affirm.

## I. FACTS

In January 2017, defendant was living with his sister, Melinda Pena ("Pena"), and her four children. On the day of the incident, one of Pena's children, TPM, who was 13 years old at that time, woke up during the early morning hours and was in her bed using her cellular phone at approximately 5:00 a.m. At some point, defendant entered TPM's bedroom and asked her to turn her phone off, which TPM did. Defendant then got into TPM's bed and went "under the cover[s]." He "put his hand on [her] butt and he told [her] to turn around" and said that "he would give [TPM] a hundred dollars, if [she] didn't say anything." According to TPM, she felt "[u]ncomfortable" when defendant touched her buttocks because defendant was her uncle. TPM did not turn around when defendant asked her to, and she told defendant to "go away" and to "get out of [her] room." In response, defendant asked TPM, "[a]m I wrong for this?" TPM replied by "telling [defendant] to go lay on the couch." TPM did not accept any money from defendant, and defendant eventually left her bedroom.

After defendant left her bedroom, TPM sent a text message to her mother at approximately 5:12 a.m. TPM did not leave her bedroom after she sent the text message because

-1-

she "was scared to get out of [her] bed and go upstairs and see if [Pena] was there because [defendant] was on the couch." TPM sent Pena additional text messages at approximately 6:00 a.m., and when Pena got up to check on TPM, TPM ultimately ran into Pena's room, got into Pena's bed, and cried. Eventually, after Pena repeatedly asked TPM what was wrong, TPM told Pena that defendant had touched her, but she did not provide Pena with any additional details about the incident at that time.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that he was denied the effective assistance of counsel during trial when defense counsel failed to object to Pena's testimony that TPM told her that defendant had touched her. We disagree.

To preserve a claim of ineffective assistance of counsel, a defendant must file a motion for a new trial or a *Ginther*[1] hearing to develop a record to support the claim. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). Defendant did not file a motion for a new trial or a *Ginther* hearing. Generally, when "an evidentiary hearing on defendant's claims of ineffective assistance has not been held, this Court's review is limited to mistakes apparent on the record." *People v Scott*, 275 Mich App 521, 526; 739 NW2d 702 (2007). " 'Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law.' " *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007), quoting *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "Findings on questions of fact are reviewed for clear error, while rulings on questions of constitutional law are reviewed de novo." *Jordan*, 275 Mich App at 667.

"Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012), citing Const 1963, art 1, § 20, and US Const, Am VI. Generally, "in order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51.

"Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). "There is accordingly a strong presumption of effective assistance of counsel." *Id.* The fact that a particular strategy ultimately failed does not demonstrate that a defendant was denied the effective assistance of counsel. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Defendant maintains that Pena's testimony that TPM said that defendant had touched her was inadmissible hearsay. Under the Michigan Rules of Evidence, hearsay "is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "Hearsay is generally prohibited and may only be admitted at trial if provided for in an exception to the hearsay rule." *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010), citing MRE 802.

MRE 803 provides exceptions to the hearsay rule that are applicable "even though the declarant is available as a witness[.]" Under MRE 803(2), a hearsay exception is provided for an "excited utterance" made by a declarant. MRE 803(2) defines an "excited utterance" as a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." MRE 803(2) permits hearsay testimony "that would otherwise be excluded because it is perceived that a person who is still under the sway of excitement precipitated by an external startling event will not have the reflective capacity essential for fabrication so that any utterance will be spontaneous and trustworthy." *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998) (quotation marks and citation omitted). "The pertinent inquiry is not whether there has been time for the declarant to fabricate a statement, but whether the declarant is so overwhelmed that she lacks the capacity to fabricate." *People v McLaughlin*, 258 Mich App 635, 659-660; 672 NW2d 860 (2003).

According to TPM, the incident with defendant occurred around 5:00 a.m. Pena testified that she woke up at "a little after" 6:00 a.m. on the morning of the incident, and she noticed that she had received text messages from TPM that asked Pena to "come home" and "hurry." Pena exited her bedroom, went downstairs, and began calling TPM's name. TPM responded by asking Pena to "come here." However, Pena asked TPM to "just come upstairs."

Ultimately, TPM ran into Pena's bedroom, and when Pena entered her bedroom she saw that TPM was "already in [Pena's] bed with the blanket over her head and [Pena] heard her crying." Pena "pulled the blanket off" TPM, and she asked TPM what was wrong. TPM continued to cry, and "she just kept shaking her head," and Pena "started screaming" to TPM to tell her what was wrong. After about one minute, TPM "said [defendant] touched me." Pena asked TPM "what did he do to you"; however, TPM "just kept shaking her head" and she grabbed Pena and would not let Pena go.

Defendant contends that he was denied the effective assistance of counsel when defense counsel failed to object to Pena's testimony regarding TPM's disclosure of defendant's conduct because Pena's testimony was hearsay that was not subject to any exception. Defendant's contention fails. While there appears to be no dispute that Pena's testimony regarding TPM's disclosure of defendant's conduct falls within the definition of hearsay, defendant argues that TPM's disclosure was not an excited utterance under MRE 803(2) because TPM "did not spontaneously tell" Pena that defendant touched her. Rather, TPM only made her disclosure to Pena in "response to questioning" that was "repeated and emotional."

However, defendant does not explain why Pena's questioning of TPM renders MRE 803(2) inapplicable. As explained previously, a statement by a declarant is an excited utterance if it is a "statement relating to a startling event or condition made while the declarant was under

-3-

the stress of excitement caused by the event or condition." MRE 803(2). There was ample evidence during trial that TPM's disclosure was made while she was still under the stress of excitement caused by the incident. Approximately one hour had elapsed between the incident and TPM's disclosure to Pena, and TPM initially only cried and shook her head when Pena asked her what was wrong. Even after Pena "started screaming" to TPM to tell her what was wrong, TPM only managed to reply that defendant had "touched" her, and TPM refused to provide any further details about the incident despite Pena's questioning. TPM's actions of running into Pena's room, covering herself with the blanket on Pena's bed, crying, only making a brief disclosure about the incident, and refusing to provide any additional information about the incident while continuing to cry all indicate that TPM was still under the stress of excitement caused by the incident when she made her disclosure to Pena. Therefore, TPM's disclosure to Pena falls within the excited utterance exception under MRE 803(2).

Nonetheless, defendant contends that the "constant" questioning of TPM by Pena, and the fact that TPM's disclosure was not "spontaneous," renders MRE 803(2) inapplicable. However, defendant provides no legal authority in support of his argument, and defendant does not explain why MRE 803(2) does not apply because Pena repeatedly asked TPM "what was wrong" over the course of one minute. " 'An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.' " *People v Henry*, 315 Mich App 130, 148; 889 NW2d 1 (2016), quoting *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Therefore, defendant has abandoned these arguments on appeal.

As defendant has failed to demonstrate that TPM's disclosure to Pena was inadmissible, defendant has also failed to show that defense counsel was ineffective when she failed to object to Pena's testimony. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201.

### III. PROSECUTORIAL MISCONDUCT

Defendant next argues that the prosecutor committed misconduct[2] by making statements of fact that were not in evidence pertaining to defendant rubbing TPM's buttocks. We disagree.

Generally, to preserve a claim of prosecutorial misconduct for our review, "a defendant must have timely and specifically objected below, unless an objection could not have cured the error." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Defendant did not

---

[2] This Court has explained that, "although the term 'prosecutorial misconduct' has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are 'better and more fairly presented as claims of "prosecutorial error," with only the most extreme cases rising to the level of prosecutorial misconduct.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015), quoting *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015) (quotation marks omitted).

raise an objection in the trial court based on prosecutorial misconduct. Therefore, this issue is unpreserved.

Generally, "the test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Mesik (On Reconsideration)*, 285 Mich App 535, 541; 775 NW2d 857 (2009). However, because defendant's claim is not preserved, defendant must demonstrate that an error occurred, the error was plain, and the plain error affected substantial rights to avoid forfeiture under the plain error rule. *People v Buie*, 285 Mich App 401, 407; 775 NW2d 817 (2009). "The third prong requires a showing of prejudice, which occurs when the error affected the outcome of the lower court proceedings." *People v Putman*, 309 Mich App 240, 243; 870 NW2d 593 (2015). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999), quoting *United States v Olano*, 507 US 725, 736-737; 113 S Ct 1770; 123 L Ed 2d 508 (1993) (quotation marks omitted; alteration in original).

This Court considers claims of prosecutorial misconduct on a case-by-case basis, and the prosecutor's remarks must be considered in context. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "The prosecutor may not make a statement of fact that is unsupported by the evidence." *People v Lane*, 308 Mich App 38, 67; 862 NW2d 446 (2014). However, "[p]rosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *Unger*, 278 Mich App at 236. "They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id.*

"A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007). Relatedly, this Court "will not find error requiring reversal if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction." *People v Williams*, 265 Mich App 68, 71; 692 NW2d 722 (2005), aff'd 475 Mich 101 (2006).

Defendant's preliminary examination was held in March 2017. During the preliminary examination, TPM testified that defendant "put his hand" on her buttocks. In response, the prosecutor asked TPM, "Was his hand resting on your butt; was he rubbing your butt?" TPM replied, "Rubbing." She confirmed that she remembered telling "someone" at "a place called 'Care House' " that defendant asked her to turn around while he was rubbing her buttocks.

On the first day of trial, which occurred in September 2017, the prosecutor explained during his opening statement that TPM would testify that defendant came into her room and he began "rubbing her butt," and "[r]ubbing her in a way that can only be construed as sexual." Subsequently, defense counsel asked Pena, during cross-examination, if TPM ever told Pena "how many times that [defendant] rubbed [TPM's] butt," to which Pena replied, "No." During TPM's testimony, she testified that defendant "put his hand on [her] butt[.]" Shortly thereafter, the prosecutor began to ask TPM the following question: "But you say that he starts rubbing—or I'm sorry. You said he touched your butt, is that right?" TPM responded, "Yes." The prosecutor asked TPM if defendant's hand was "moving at all on [her] butt" when he touched

her buttocks, and TPM replied, "No." The prosecutor then asked TPM questions regarding her testimony during defendant's preliminary examination:

> *Q.* [TPM], you told us that you testified before in this case, right?
>
> *A.* Yes.
>
> *Q.* At the preliminary examination?
>
> *A.* Yes.
>
> *Q.* Do you remember testifying there when you were asked, was his hand rubbing your butt?
>
> *A.* Yeah.
>
> *Q.* And you said rubbing?
>
> *A.* Well, I can't remember. It was a long time ago.
>
> *Q.* Okay. So, if you testified at the preliminary examination which was [in March 2017], and you'd agree with me that March [2017] is a lot closer to January [2017] than we are today, right?
>
> *A.* Yes.
>
> *Q.* So if you testified [in] March [2017] that his hand was rubbing your butt, was that true?
>
> *A.* Yes.
>
> *Q.* And are you telling us today that you don't remember exactly?
>
> *A.* Yes.
>
> *Q.* Because now it's September [2017], right?
>
> *A.* Right.

Later, the prosecutor asked TPM, "What you've told us today in court about [defendant] coming into your room, touching your butt, rubbing your butt, offering you a hundred dollars not to tell, is that the truth," and TPM replied, "Yes."

During the prosecutor's closing argument, he argued to the jury that: "[Defendant] came into [TPM's] room. He started touching her butt. He started rubbing her butt. He's asking her to turn over. She's telling him, get out, get out." However, the prosecutor subsequently explained to the jury that he knew "that in the grand scheme of things, touching of the butt is

about as minimal of criminal sexual conduct you can get," and that he was "not blind to that fact."

Defendant's claim of prosecutorial misconduct is based upon his assertion that the prosecutor erred when he "deliberately mischaracterized the evidence by arguing defendant rubbed [TPM's] buttocks," which confused the jury and prevented defendant from receiving a fair trial. Defendant's assertion fails. Defendant notes that the prosecutor "was clearly confounded" by TPM's testimony that defendant only touched her buttocks. Nonetheless, defendant contends that "the prosecution knowingly argued facts not in evidence" to "obtain a conviction," and that "[t]he fact the prosecutor mischaracterized the evidence throughout the trial in an attempt to make the alleged solitary touch appear more serious or to establish the element of sexual purpose indicates a curative instruction would not have alleviated the prejudicial effect."

However, as noted by defendant, the prosecutor likely anticipated that TPM would provide testimony that would be consistent with the testimony she gave during defendant's preliminary examination. Defense counsel also apparently anticipated that testimony when she asked Pena, who testified at trial before TPM, if TPM ever told Pena "how many times that [defendant] rubbed [TPM's] butt," to which Pena replied, "No."

Moreover, when TPM testified that defendant only touched her buttocks, the prosecutor responded by asking TPM about her testimony during defendant's preliminary examination, and TPM confirmed that, if her previous testimony was that defendant rubbed her buttocks, then that testimony was true. During closing arguments, the prosecutor made one reference to defendant "rubbing" TPM's buttocks, presumably based upon TPM's testimony that her preliminary examination testimony was true. And ultimately, the trial court instructed the jury that the arguments, statements, and questions of the prosecutor and defense counsel were not evidence.

Defendant does not challenge on appeal the admissibility of TPM's testimony regarding her preliminary examination testimony. Therefore, defendant has abandoned any challenge relating to TPM's testimony concerning her preliminary examination testimony. Defendant has failed to demonstrate how the prosecutor's prediction during his opening statement that TPM would testify that defendant rubbed her buttocks and the prosecutor's reference to defendant rubbing TPM's buttocks denied defendant a fair trial where defense counsel also apparently anticipated that testimony from TPM, and where, as already discussed, TPM did provide some testimony regarding her preliminary examination testimony.

Regardless, even if defendant had demonstrated how the prosecutor's references to defendant rubbing TPM's buttocks were error, any error was cured by the trial court's instructions to the jury. This Court "will not find error requiring reversal if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction." *Williams*, 265 Mich App at 71. The trial court instructed the jury that the "lawyers' statements and argument are not evidence," and that the "lawyers' questions to witnesses are also not evidence." Therefore, any error was cured by the trial court's instructions to the jury.

-7-

## IV. SUFFICIENCY OF THE EVIDENCE

Finally, defendant argues that there was insufficient evidence presented during trial to support his conviction of CSC-II. We disagree.

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Harrison*, 283 Mich App 374, 377-378; 768 NW2d 98 (2009). The evidence must be viewed "in the light most favorable to the prosecution in order to determine whether a rational trier of fact could have found that the prosecution proved the elements of the crime beyond a reasonable doubt." *People v Levigne*, 297 Mich App 278, 281-282; 823 NW2d 429 (2012). When reviewing a challenge to the sufficiency of the evidence, "[a]ll conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016) (citation omitted). It is the role of the trier of fact to determine the weight of the evidence and evaluate the credibility of witnesses. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). "The testimony of a victim need not be corroborated in [CSC] prosecutions . . . ." MCL 750.520h.

Defendant was convicted of one count of CSC-II pursuant to MCL 750.520c(1)(b)(*ii*), which provides that "[a] person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person," the "other person is at least 13 but less than 16 years of age," and "[t]he actor is related by blood" to the fourth degree to the victim. Under MCL 750.520a(q), sexual contact "includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for" "[r]evenge," "[t]o inflict humiliation," or "[o]ut of anger."

Defendant does not dispute that TPM was 13 years old at the time of the incident, and he does not contest that he is related to TPM by blood. Rather, defendant argues that, based on TPM's testimony, the prosecution failed to show "how it was possible" for defendant to touch TPM's buttocks because TPM testified that she was lying on her back at the time of the incident. During trial, TPM testified that she was lying on her back in her bed when defendant got into her bed, "put his hand on [her] butt," and told her to "turn over." However, TPM clarified that she was on her "back, but just [her] shoulder was kind of turned," and that defendant "just put his hand on [her] butt." The jury was free to draw reasonable inferences from the evidence presented at trial, and the jury could have reasonably inferred that TPM was lying in bed, with her shoulder partially turned, in such a way that defendant could have touched TPM's buttocks. Alternatively, the jury could have also reasonably inferred that defendant was able to interpose his hand between TPM's body and her bed, as TPM clearly testified that defendant placed his hand on her buttocks. Therefore, defendant's argument fails.

Defendant also contends that there was no evidence that defendant touched TPM's buttocks for "the purpose of sexual arousal or gratification or done for [a] sexual purpose." According to defendant, the prosecution failed to present any evidence that defendant's "alleged single touch" was "intentional or sexually motivated."

TPM testified that defendant entered her bedroom at approximately 5:00 a.m., got into her bed underneath the covers, placed his hand on her buttocks, and asked her to "turn over." TPM responded by telling defendant to "go away" and "get out of [her] room," which resulted in defendant asking TPM, "[a]m I wrong for this?" Defendant also told TPM that "he would give [TPM] a hundred dollars, if [she] didn't say anything." Thus, the jury could have reasonably inferred that defendant intentionally touched TPM's buttocks, and that his touching of TPM qualified as sexual contact, because defendant not only got into TPM's bed and touched her buttocks, he also attempted to give TPM $100 in exchange for her silence about his actions. Therefore, there was sufficient evidence that defendant touched TPM's buttocks for a sexual purpose.

Affirmed.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ James Robert Redford