*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
October 15, 2019

Plaintiff-Appellee,

v

Nos. 342394; 342395; 342396
Macomb Circuit Court

ANTHONY JOSEPH VEACH,

LC Nos. 2017-000447-FC;
              2017-001859-FC;
              2017-001865-FC

Defendant-Appellant.

Before: CAVANAGH, P.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

A jury convicted defendant of a total of seven counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b)(*ii*), and two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(b)(*ii*), arising from charges in three separate cases that were consolidated for trial. The jury convicted defendant of one count of CSC-I and one count of CSC-II in LC No. 2017-000447-FC; four counts of CSC-I in LC No. 2017-001859-FC; and two counts of CSC-I and one count of CSC-II in 2017-001865-FC. The trial court sentenced defendant to prison terms of 20 to 60 years for each CSC-I conviction and 10 to 15 years for each CSC-II conviction, to be served concurrently. Defendant appeals as of right in each case. We affirm defendant's convictions, but remand for resentencing.

Defendant was convicted of sexually abusing his daughter in 2015 and 2016, when she was 14 and 15 years old. The abuse began after defendant and his then wife, Christine Pecorilli, had separated. The victim eventually disclosed the abuse to Pecorilli, her stepmother, who then contacted the police. The victim testified that there were multiple episodes of sexual abuse, but she could not recall specific details of each incident. The charges were based on separate incidents that occurred in different homes where defendant lived in Sterling Heights, Eastpointe, and Warren. The victim also testified regarding other uncharged incidents of sexual abuse. Defendant presented several witnesses who testified that he could not have sexually abused the victim because other family members were always around when the alleged abuse occurred.

-1-

# I. CLOSURE OF THE COURTROOM

A preliminary examination was held in each of the three cases. During each preliminary examination, the court closed the courtroom while the victim, then 16 years old, testified. After defendant was bound over for trial, the prosecutor filed a motion in the trial court to close the courtroom during the victim's testimony at trial pursuant to MRE 611(a)(3), to protect her from harassment or undue embarrassment. The trial court granted the motion over defendant's objection. Defendant now argues that the trial court violated his constitutional right to a public trial by closing the courtroom during the victim's testimony at trial. This presents a question of constitutional law that we review de novo. *People v Vaughn*, 491 Mich 642, 649-650; 821 NW2d 288 (2012). Defendant also argues that the trial court did not comply with applicable statutory procedures before closing the courtroom. Issues regarding the application of a statute are also reviewed de novo. *People v Rose*, 289 Mich App 499, 505; 808 NW2d 301 (2010).

The Sixth Amendment of the United States Constitution, which applies to states by the Due Process Clause of the Fourteenth Amendment, guarantees a criminal defendant the right to a public trial. *Vaughn*, 491 Mich at 650. Our state constitution also guarantees that a criminal defendant "shall have the right to . . . a public trial . . . ." Const 1963, art 1, § 20. However, this right is not absolute. As explained in *Vaughn*, 491 Mich at 653:

> A defendant's Sixth Amendment right to a public trial is limited, and there are circumstances that allow the closure of a courtroom during any stage of a criminal proceeding, even over a defendant's objection:
>
> > "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure."
>
> If there is a timely assertion of the Sixth Amendment public trial right, the remedy for a violation must be "appropriate to the violation," although "the defendant should not be required to prove specific prejudice in order to obtain relief . . . ." [Citations omitted.]

MCR 8.116(D) implements procedures for closing a courtroom:

> (1) Except as otherwise provided by statute or court rule, a court may not limit access by the public to a court proceeding unless
>
> (a) a party has filed a written motion that identifies the specific interest to be protected, or the court *sua sponte* has identified a specific interest to be protected, and the court determines that the interest outweighs the right of access;
>
> (b) the denial of access is narrowly tailored to accommodate the interest to be protected, and there is no less restrictive means to adequately and effectively protect the interest; and

(c) the court states on the record the specific reasons for the decision to limit access to the proceeding.

Initially, contrary to what defendant asserts, the trial court did not order closure of the courtroom under MCL 600.2163a, which generally applies to witnesses under 16 years of age. Rather, the prosecution's motion cited MRE 611(a)(3) as authority for its request to close the courtroom during the victim's testimony. MRE 611(a)(3) provides a court with discretion to implement procedures to protect a witness from harassment or undue embarrassment. Because of the sensitive nature of the victim's testimony, her fear of retaliation from defendant, and the family discord caused by her allegations, the trial court had valid reasons for believing that the victim would be subject to embarrassment or harassment if the courtroom remained open during her testimony.

Defendant argues that it was inappropriate for the trial court to consider that there had not been any objection to the closures of the courtrooms at the preliminary examinations. According to defendant, the trial court erroneously relied on the prior closures to place the burden on him to justify that the courtroom should be opened at trial. We disagree. The trial court did not rule that defendant had forfeited or waived the right to a public trial by previously stipulating to the courtroom closures at the preliminary examinations. The court merely observed that the circumstances that justified the closures for the victim's testimony at the preliminary examinations had not changed in the six or seven months since then.

Defendant also argues that the use of a support person while the victim testified was a reasonable alternative to closing the entire courtroom to spectators. However, given the victim's expressed fear of defendant retaliating against her, as he had done in the past, and given the family discord stemming from the victim's allegations, allowing defendant's friends and family members to remain in the courtroom during the victim's testimony, even with a support person present, would have still exposed the victim to potential harassment or embarrassment from having to testify about intimate matters before defendant's family and friends. Accordingly, we are not persuaded that the presence of a support person was a less restrictive means to adequately and effectively protect the victim from harassment and embarrassment than closing the courtroom during her testimony. See MRE 611(a); MCR 8.116(D). The trial court narrowly tailored the closure to accommodate the specific interest to be protected by limiting the closure to the victim's testimony only. Under the circumstances, the trial court's closure of the courtroom while the victim testified did not violate defendant's right to a public trial.

## II. HEARSAY EVIDENCE

Defendant next argues that the trial court erred by admitting Pecorilli's testimony regarding the victim's disclosure of the sexual abuse. Defendant argues that the testimony was inadmissible hearsay. We disagree. A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. Any preliminary questions of law are reviewed de novo. *People v Washington*, 468 Mich 667, 670-671; 664 NW2d 203 (2003).

Pecorilli testified that during a car ride to a park, she had a conversation with her children, including the victim, in which she discussed with them the importance of being honest with her for their own safety. Pecorilli initiated the conversation after she learned that

defendant's mother had allowed someone she did not approve of to be around the children and then told the children to lie about that person being there. According to Pecorilli, once they were at the park and the other children were playing, the victim became very emotional and revealed that defendant had been sexually abusing her and that it had happened multiple times at many different locations. After this conversation, Pecorilli contacted the police, who began an investigation. Although defendant raised a hearsay objection to the victim's statements to Pecorilli, the prosecutor argued that the statements were admissible under the hearsay exceptions for either an excited utterance, MRE 803(2), or a statement of the declarant's then-existing mental, emotional, or physical condition, MRE 803(3). The trial court overruled defendant's hearsay objection, but did not specify the basis for its ruling.

Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c); *People v Dendel (On Second Remand)*, 289 Mich App 445, 452; 797 NW2d 645 (2010). "Hearsay is not admissible except as provided by [the Michigan Rules of Evidence]." MRE 802. However, if the evidence is offered for a purpose other than to prove the truth of the matter asserted, then, by definition, it is not hearsay. *People v Musser*, 494 Mich 337, 350; 835 NW2d 319 (2013). When a statement is offered to explain why certain action was taken, it is not hearsay. *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007).

Preliminarily, we agree that the victim's statements to Pecorilli were not admissible under MRE 803(3), as statements of the victim's then-existing mental, emotional, or physical condition. MRE 803(3) provides that the following statements are not excluded by the hearsay rule, even if the witness is available:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Although the victim was in an emotional state when she made her statements, the statements were not describing her then-existing state of mind or emotions, but rather were statements of her memory of defendant's sexual abuse. Therefore, the statements were not admissible under MRE 803(3). However, even if the trial court erred in admitting the statements under MRE 803(3), such error was harmless because the record supports the admissibility of the statements under MRE 803(2).

MRE 803(2) provides that an excited utterance is not excluded by the hearsay rule, even if the declarant is available as a witness. An exited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id*. The requirements for admitting an excited utterance are "1) that there be a startling event, and 2) that the resulting statement be made while under the excitement caused by the event." *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998). "[I]t is the lack of capacity to fabricate, not the lack of time to fabricate, that is the focus of the excited utterance rule. The question is not strictly one of time, but of the possibility for conscious reflection." *Id*. at 551. Although the passage of time is a relevant consideration, "there is no

express time limit for excited utterances." *Id*. Admissibility depends not necessarily on how much time has elapsed since the startling event, but rather whether the declarant was still under the stress of excitement resulting from that event. "The trial court's determination whether the declarant was still under the stress of the event is given wide discretion." *Id*. at 552.

The victim's statements related to defendant's alleged sexual abuse, which qualifies as a startling event. Defendant argues that the passage of time between the alleged sexual abuse and the victim's statements weighs against admitting the statements as excited utterances. According to the victim's testimony, the last incident of sexual abuse occurred during her last contact with defendant on July 3, 2016. The victim's disclosure to Pecorilli occurred on July 15, 2016. Thus, there was a passage of about 12 days between the alleged startling event and the victim's disclosure to Pecorilli. In *People v Straight*, 430 Mich 418, 425-426; 424 NW2d 257 (1988), the Court held that a delay of a month was too long to admit statements under MRE 803(2). The Court explained:

> Few could quarrel with the conclusion that a sexual assault is a startling event. The difficulty in this case arises because the statements at issue were made approximately one month after the alleged assault, immediately after a medical examination of the child's pelvic area, and after repeated questioning by her parents. Under these circumstances, it simply cannot be concluded that the statements were made "while the declarant was under the stress of excitement *caused by the event or condition*." Certainly the declarant was under stress, but one cannot safely say that this stress resulted from the alleged assault rather than from a combination of the medical examination and repeated questioning. [Footnotes omitted.]

This case is distinguishable from *Straight*. First, the time period is substantially shorter than a month. Second, the victim's statements were not made in response to repeated questioning. They were prompted by a discussion that had nothing to do with sexual assault. The victim made the statements after Pecorilli reminded her children of the importance of being truthful. After this discussion, the victim began to show physical signs of suffering from emotional stress. She did not want to play with the other children. Instead, she began sobbing and hyperventilating, and she cowered as she sat on a park bench. The victim eventually told Pecorilli that she was upset about what defendant had done to her and that it was "going to ruin everything." The victim's reaction to a conversation that did not directly involve sexual abuse showed that she was still under the stress of the sexual abuse when she disclosed the abuse to Pecorilli. Although defendant argues that the passage of time created an opportunity for the victim to fabricate the allegations, there was no evidence of any motive to fabricate and the circumstances under which the statements were made showed that fabrication was unlikely. Because the requirements for an excited utterance were satisfied, the trial court did not abuse its discretion by admitting the statements.

Even if the trial court erred by admitting the victim's statements to Pecorilli, the error would not require reversal. "A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013) (quotation marks omitted). The primary effect of Pecorilli's

testimony was to provide an explanation for how the abuse was reported to the police and led to the police investigation. As noted, statements offered to explain why certain action was taken are not hearsay. *Chambers*, 277 Mich App at 11. Pecorilli did not offer details about specific acts of sexual abuse. She testified generally that the victim described being sexually abused. Pecorilli testified that the victim's statements caused her to report the allegations to the police, which in turn led to the police investigation and the scheduling of forensic interviews. The testimony was not offered for a principal purpose of bolstering the victim's testimony, and would have had little effect for that purpose given that Pecorilli did not provide details of the victim's report of the alleged abuse. In contrast, the victim testified at length about the incidents she recalled and was subject to cross-examination by defendant about those details. Under these circumstances, after an examination of the entire cause, it does not affirmatively appear more probable than not that any error in the admission of the limited testimony offered by Pecorilli affected the trial's outcome.

## III. PROSECUTORIAL MISCONDUCT

Next, defendant argues that misconduct by the prosecutor during trial denied him a fair trial. Because defendant failed to object to the claimed instances of misconduct, these claims are not preserved. Review on an unpreserved claim of prosecutorial misconduct "is limited to whether plain error affecting substantial rights occurred." *People v Abraham*, 256 Mich App 265, 274-275; 662 NW2d 836 (2003) (footnote omitted). This Court will not reverse if the prejudicial effect of the prosecutor's conduct could have been cured by a timely instruction from the trial court. *People v Williams*, 265 Mich App 68, 70-71; 692 NW2d 722 (2005), aff'd 475 Mich 101 (2006).

Claims of prosecutorial misconduct are decided case by case and the challenged conduct must be viewed in context. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996). The test for prosecutorial misconduct is whether the defendant was denied a fair trial. *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995). A prosecutor is afforded great latitude during closing argument. A prosecutor may not make a statement of fact that is unsupported by the evidence, but he is permitted to argue the evidence and reasonable inferences arising from the evidence in support of his theory of the case. *Id.* at 282; *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003). Although a prosecutor must refrain from making prejudicial remarks, he is not required to phrase his arguments in the blandest of terms and he may use "hard language" when the evidence supports it. *Bahoda*, 448 Mich at 282; *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996). A prosecutor may comment on the credibility of a witness, but he may not vouch for a witness's credibility by suggesting that he has some special knowledge about the witness's truthfulness. *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011); *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004).

Defendant argues that the prosecutor improperly stated during closing argument that the victim had remained consistent about her allegations. Viewed in context, the prosecutor's comments were referring to the evidence of the victim's prior statements and testimony admitted at trial. If the victim had made prior inconsistent statements, that information could have been brought out on cross-examination, but absent such evidence, it was not improper for the prosecutor to generally argue that the evidence showed that the victim had been consistent about her allegations. Furthermore, to the extent that the prosecutor's argument could be considered

improper, a curative instruction, upon timely request, could have cured any perceived prejudice. Indeed, even without an objection, the trial court instructed the jury that its verdict must be based on "the evidence that has been properly admitted in this case," that "[t]he lawyers and statements and argument are not evidence," and that the jury "should only accept things the lawyers say that are supported by the evidence." These instructions were sufficient to protect defendant's substantial rights.

Defendant also argues that the prosecutor improperly commented on defense counsel's attempts to impeach the victim's testimony. Defendant complains that the prosecutor's remarks sought to convict him on the basis of defense counsel's skill and knowledge, rather than the actual facts of the case. Although a prosecutor may not personally attack defense counsel, *People v McLaughlin*, 258 Mich App 635, 646; 672 NW2d 860 (2003), the challenged remarks, viewed in context, were focused on how the victim's responses to defense counsel's questioning demonstrated her credibility. The remarks were not a direct attack on defense counsel's legal skills. It was not improper for the prosecutor to argue that the manner in which she handled and responded to defense counsel's cross-examination were reasons to find that her testimony was credible. Moreover, to the extent that the remarks could be considered improper, a timely objection and curative instruction could have cured any perceived prejudice. And again, even without an objection, the trial court's instructions were sufficient to protect defendant's substantial rights.

Defendant next argues that the prosecutor improperly commented on the Care House interviews during the following portion of the prosecutor's opening statement:

> Now Care House is a facility that we have here in Macomb county [sic] that is child [sic] advocacy center and the purpose of the child advocacy center, Care House, is to do forensic interviews on children who are the suspected victims of child abuse, child sexual assault or witness to violent crimes.
>
> The forensic interviewer, there [sic] are highly trained. They have specialized knowledge in asking of questions. There is a certain method and manner that is followed based on a protocol that is set forth by a government task force in Michigan.
>
> That is the reason why kids go to that facility as opposed to being interviewed by the detective at our local police department.
>
> So she went to Care House and she was interviewed and she disclosed at Care House certainly more details were [sic] provided at Care House to the forensic interviewer than were initially provided to Christina. And after that the Defendant was then charged by the prosecutor [sic] office.

Defendant argues that the prosecutor misled the jury by stating that the victim's Care House interview actually conformed to protocols set by a Michigan task force because, according to defendant, it is the policy of Macomb County to not record forensic interviews, which defendant contends is not a state-wide policy. Viewed in context, the prosecutor's limited comment regarding task force protocols referred only to the "asking of questions." Defendant has not

provided any basis for concluding that the manner in which the forensic interviewer questioned the victim did not conform to state protocols.

Defendant's principal complaint on appeal is with Macomb County's policy of not recording forensic interviews, which defendant contends is not a policy shared by the Michigan task force or followed by other counties.[1] This broader argument is beyond the scope of this appeal. Notably, defendant never offered any evidence regarding the procedures used in different counties or whether Macomb County's procedures were consistent with state guidelines or recommendations. Further, defendant never created a factual record to explain or demonstrate how the failure to record the victim's interview affected his substantial rights, particularly where he was provided with the interviewer's written summary of the interview. Accordingly, defendant has not demonstrated entitlement to relief with respect to this unpreserved issue.

Defendant further argues that the prosecutor improperly told the jury that the victim's Care House interview corroborated her trial testimony and that this was improper because a verbatim recording of that interview was never prepared. Although the interview was not recorded, a written summary of the interview, which included the victim's responses, was prepared by the forensic interviewer. Defendant does not contend that the prosecutor misrepresented the contents of that summary. To the extent that defendant continues to argue that a video or audio recording of the interview would have provided a more accurate record of the interview, that again is a policy argument that goes beyond the scope of this appeal. Because defendant did not challenge that policy in an appropriate motion in the trial court, and failed to create a factual record in support of his arguments on appeal, he is not entitled to relief.

Defendant next argues that the prosecutor improperly harassed defense witnesses and raised frivolous objections, which denied him a fair trial. The record does not support this argument. The record discloses that the prosecutor objected during defense counsel's questioning of Tina Marra, a defense witness, arguing that the witness was providing nonresponsive answers to the questions asked. Contrary to what defendant argues, it was not solely within the province of defense counsel to raise that type of objection. See 2 Longhofer, Michigan Court Rules Practice, Evidence (4th ed), p 340, § 611.6.9. The prosecutor is an advocate for the state, and a prosecutor's good-faith effort to admit or exclude evidence does not constitute misconduct. *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007). The record indicates that Marra frequently offered testimony that went beyond the scope of the question asked. It was appropriate for the prosecutor to object when testimony exceeded the scope of defense counsel's question. We note that the trial court sustained some of the objections and instructed the witness to respond only to the questions asked. The objections did not amount to harassment.

Defendant complains that the prosecutor made similar objections to the testimony of other defense witnesses when, according to defendant, the answers provided by the witnesses

---

[1] Although the victim's interview was not recorded, a written summary of that interview, which included the victim's responses to questioning, was prepared by the forensic interviewer and provided to the defense.

were actually responsive. Defendant argues that the prejudice from the prosecutor's frequent objections was compounded by the prosecutor's following comments during closing argument:

> Now contrast that with what you saw from defense witnesses. There was not a single defense witness that took the stand that I think answered a question directly, not one. They evaded the questions, they were squirrelly about the questions. They had to be instructed by the judge to answer the questions. They were trying to give their own answers. Their body language was turned away. There were even a couple witnesses that were hiding their faces when they were answering questions, if they were answering the question at all.

Again, it was not improper for the prosecutor to object to testimony he deemed improper or unresponsive. The record shows that the prosecutor was acting within proper bounds by attempting to have the witnesses respond to the questions asked. Again, the trial court agreed that some of the witnesses' answers were nonresponsive. It was also appropriate for the prosecutor to comment on the witnesses' demeanor while testifying and to argue that their unwillingness to provide direct responses affected their credibility. The prosecutor's conduct, even if aggressive, did not amount to plain error that affected defendant's substantial rights.

Defendant also argues that the prosecutor wrongly implied that Marra and defense counsel had unethically coordinated an alibi defense. The record shows that Marra admitted to talking to family members about the victim's testimony during the preliminary examinations, even though those hearings were closed to the public. When the prosecutor further questioned Marra about how she knew that one of the incidents involved a fundraiser event in July 2015, Marra testified that the defense attorneys asked her about that day and it was the attorneys who told her that one of the incidents allegedly occurred that day. The questioning was merely intended to determine what Marra knew about the victim's testimony and the source of that knowledge. It was not improper for the prosecutor to inquire whether Marra may have been influenced by her contacts with others involved in this case. Contrary to what defendant argues, the prosecutor did not imply that Marra and defense counsel had unethically coordinated a false alibi.

Defendant further argues that the prosecutor "bullied" Angel Rose[2] on cross-examination. Although this witness apparently became emotional during her testimony and stated, "I am going to end up freaking out," the record does not support defendant's argument that the witness's emotional reaction to questioning on cross-examination was the result of "bullying" by the prosecutor. When the witness expressed that she did not want to continue testifying, the prosecutor discontinued questioning her and the witness was excused.

---

[2] This witness is improperly identified as April Veach in defendant's brief. Defendant also asserts that the prosecutor took advantage of this witness's health problem, but there is no indication in the record that the witness had a known illness or condition.

In sum, the record shows that the prosecutor had a good-faith basis for objecting to testimony and that his questioning of witnesses did not amount to impermissible harassment. Defendant has failed to show that plain error occurred as a result of the prosecutor's conduct.

Defendant further complains that, during the prosecutor's opening statement, the prosecutor made multiple improper references to defendant's incarceration and the revocation of a power of attorney that defendant had given to Pecorilli while he was in jail. However, the prosecutor only generally explained that defendant was not consistently involved in the victim's life because of his "constant poor choices in life" and that Pecorilli had assumed a parental role. Those comments did not mention that defendant was in jail. The prosecutor also explained to the jury that defendant asked Pecorilli to act in his place to make decisions for the victim when defendant was unavailable, but again did not state why defendant was unavailable. In her opening statement, the prosecutor explained that the evidence would show that defendant began to sexually assault the victim after Pecorilli and defendant's relationship began to unravel, and that, given the victim's close relationship to Pecorilli, she chose to confide in her. In both her opening statement and closing argument, the prosecutor addressed the fact that defendant revoked the power of attorney after the victim's allegations came to light, allegedly because defendant believed that Pecorilli was behind the allegations and had influenced the victim to fabricate the allegations.

At trial, the prosecutor elicited information about why the victim was living with Pecorilli, which included defendant's inability to provide for her. In her testimony, the victim explained that the sexual assaults began after defendant returned from being in jail. There was no effort to introduce this information for the prohibited purpose of demonstrating defendant's bad character, MRE 404(b)(1). It was offered only as relevant background information to provide context for understanding the victim's relationships with defendant and Pecorilli, and the setting for when the sexual abuse began. "[P]rosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence." *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999). Accordingly, there was no plain error. Furthermore, the jury was informed that defendant's incarceration was not related to any type of sexual offense, but instead was for a crime involving marijuana, and the trial court gave cautionary instructions with regard to the limited permissible purpose for which the marijuana conviction could be considered. Thus, the presentation of this evidence did not affect defendant's substantial rights.

For these reasons, we reject defendant's arguments that he is entitled to a new trial because of the prosecutor's conduct.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he did not receive effective assistance from trial counsel. Because defendant did not raise an ineffective-assistance claim in the trial court, our review of this issue is limited to errors apparent from the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced defendant that he was denied the right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). Defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *People v Tommolino*, 187

Mich App 14, 17; 466 NW2d 315 (1991). To establish prejudice, defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996).

Defendant complains that defense counsel failed to question the victim about her previous testimony to establish inconsistencies between her former testimony and her trial testimony. For the Warren incident, the victim testified at the preliminary examination that she and her siblings were at a fundraiser event and went to defendant's home afterward. When they arrived at defendant's house, the victim went with defendant to his upstairs bedroom while her siblings remained in the car. The victim described defendant having her perform a single sexual act involving penetration. At trial, however, the victim described defendant performing two acts of penetration after returning from the fundraiser event. Defense counsel questioned the victim about the timing of this incident, but did not attempt to use her prior testimony to impeach her trial testimony regarding how defendant sexually assaulted her. At the preliminary examination for the Sterling Heights incident, the victim testified that the sexual assault occurred in the mobile home where defendant was living with his girlfriend, Brandy, and that Brandy was in another bedroom during the assault. At trial, the victim testified that she was alone in the bedroom with defendant, but then Brandy "started talking" and defendant "had to leave." Defendant asserts that there was an inconsistency regarding whether Brandy unknowingly interrupted the sexual assault, but the record does not indicate whether Brandy entered defendant's bedroom or started talking from another room. In any event, defense counsel did not explore this issue on cross-examination.

"Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Defendant must overcome the strong presumption that defense counsel exercised sound trial strategy and must show that, but for counsel's error, there is a reasonable probability that the outcome of the trial would have been different. *Id*. at 368-369.

While defendant has shown that there were areas where defense counsel could have shown or explored possible inconsistencies between the victim's trial testimony and her prior testimony regarding certain details of the alleged incidents, the victim had already conceded that she could not recall every incident with defendant, and she admitted that she had difficulty recalling all of the details of each incident or distinguishing between different incidents. Given these admissions by the victim, counsel may have reasonably determined that using her prior testimony to impeach her trial testimony regarding certain details of the various incidents would have had little value, but instead may have been negatively perceived by the jury, either because the jury might expect that the victim would understandably have difficulty remembering all of the details of each incident, or by creating sympathy for the victim if counsel's questioning was perceived as bullying. Defendant has not overcome the presumption that defense counsel's decisions regarding the scope and manner of his cross-examination of the victim was reasonable trial strategy.

Next, defendant argues that defense counsel was ineffective for not objecting to the introduction of improper character evidence about him and his family members. Defendant contends that evidence about his lack of education, lack of steady employment, drug use,

neglectful conduct as a father, illegal copying of movies,[3] and criminal record, was irrelevant and should not have been introduced as evidence. Contrary to what defendant argues, this evidence was relevant to show the dynamics of the relationships between the victim and defendant, the victim and Pecorilli, and Pecorilli and defendant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. The jury needed to understand the setting for the alleged sexual abuse, and why the victim would choose to disclose the allegations to Pecorilli, who was defendant's ex-wife and the victim's former stepmother. The challenged evidence was probative of why Pecorilli ended her relationship with defendant, why the victim continued to reside with Pecorilli after her separation from defendant despite that Pecorilli was not the victim's natural mother, why the victim might delay reporting defendant's sexual abuse, and why the victim would be willing to eventually disclose the abuse to Pecorilli. Thus, any relevancy objection to this evidence would have been futile. Counsel is not required to make a futile objection. *People v Darden*, 230 Mich App 597, 605; 585 NW2d 27 (1998). Further, because this evidence was neither offered nor used as other-acts evidence intended to show defendant's bad character, any objection on the basis of MRE 404(b) also would have been futile. Likewise, an objection to this testimony on the ground that it was unfairly prejudicial, MRE 403, would have been futile because it was necessary to explain the circumstances surrounding the alleged abuse and the victim's disclosure of the allegations.

Defendant also faults counsel for eliciting testimony that he had a prior conviction involving marijuana. Pecorilli testified on direct examination about defendant being arrested and jailed. Defense counsel intervened and the prosecutor clarified that the arrest was for an unrelated matter, which was not sex-related. On cross-examination, defense counsel elicited that defendant's arrest involved marijuana. Defense counsel reasonably understood that defendant's incarceration was relevant because it explained why the victim was living with Pecorilli after she had separated from defendant, and because the victim had claimed that the sexual abuse began after defendant was released from jail. Knowing that, and even though Pecorilli had not revealed the nature of the offense for which defendant had been arrested (other than that it was not sex-related), it was not unreasonable for defense counsel to elicit that the arrest was related to marijuana, thereby preventing the jury from speculating that it involved more serious conduct. Counsel also asked Pecorilli whether she was aware that defendant subsequently obtained a medical marijuana card. Defendant has not overcome the presumption that counsel's manner of dealing with this issue was sound trial strategy. Moreover, in the court's final instructions, it instructed the jury that it was to consider the evidence that defendant was previously "convicted of a crime involving marijuana in the past" "only in deciding whether you believe the defendant is a truthful witness. You may not use it for any other purpose." Given this backdrop, there is no reasonable probability that this testimony affected the outcome of defendant's trial.

---

[3] The victim testified that defendant illegally downloaded a copy of the movie, *Fifty Shades of Gray*, and allowed her to watch it. The defense theorized that the victim's allegations in this case were influenced by information she obtained from watching that film. The comment that defendant illegally downloaded the movie was volunteered by the victim.

Defendant also argues that counsel was ineffective for not objecting to the testimony regarding the power of attorney that defendant gave to Pecorilli, and the testimony that defendant later revoked that power of attorney after the victim made the allegations against defendant. After the power of attorney was revoked, Pecorilli became the victim's foster parent. Defendant maintains that this evidence was not relevant, but again, this evidence was probative of the nature of the relationship between Pecorilli and the victim, and thus was relevant to explain why the victim would choose to disclose the abuse to Pecorilli. Once again, any relevancy objection by defense counsel would have been futile.

Defendant also complains about counsel's failure to object to testimony about defendant's extended family, particularly Rosey, which defendant again argues was not relevant. The testimony indicated that the victim had lived with different family members, or that different family members were often around during the periods in which the alleged abuse occurred. With regard to Rosey, Pecorilli explained why she did not want the children to spend time around Rosey, but also testified that the victim and Rosey were like sisters because they grew up together. Pecorilli explained that Rosey did not "follow the straight and narrow," she did not "listen to authority, she did not "listen to family," and she "will throw someone under the bus if it will save her." The victim would sometimes get in trouble because Rosey talked her into leaving the house when she was not supposed to, or to going places she was not allowed to go. On cross-examination, defense counsel further questioned Pecorilli about Rosey and why she was a bad influence on the victim.

Testimony about defendant's family members, particularly Rosey, was again relevant to an understanding of the family dynamics in which the victim was raised and lived. Indeed, part of the defense theory was that defendant never had the opportunity to sexually abuse the victim because other family members were always around. Although defendant complains that it was not necessary to introduce Pecorilli's testimony that defendant's family members were demanding, manipulative, and "difficult to get along with," this testimony was probative of why the victim would have formed a relationship with Pecorilli and would choose to disclose the abuse to Pecorilli instead of a different family member. Moreover, the victim explained that defendant did not want her around Rosey because she was a bad influence, and that the sexual abuse began after defendant found out that she had spent time with Rosey. For that reason, defendant had the victim stay in his bedroom with him during visits when Rosey was around. According to the victim, the sexual assaults were part of the punishment she received for spending time with Rosey. Therefore, it was necessary for the jury to understand why defendant did not like the victim spending time with Rosey, and why defendant felt it was necessary to "punish" the victim for doing so. Defendant has not shown that defense counsel's failure to object to this testimony was objectively unreasonable.

Defendant argues that defense counsel was ineffective for failing to object to the victim's hearsay statements to Pecorilli when the victim disclosed the sexual abuse. As explained earlier, the victim's statements to Pecorilli were admissible under the hearsay exception for excited utterances, MRE 803(2). In any event, defense counsel objected to this testimony at trial and the trial court overruled the objection. Therefore, defendant cannot establish ineffective assistance of counsel on this basis.

Defendant also argues that defense counsel should have objected to Pecorilli's testimony that the victim had earlier reported that defendant physically confronted her, but did not mention any sexual abuse. Defense counsel may have reasonably declined to object to this testimony because it showed that the victim was not hesitant about reporting perceived misconduct by defendant, yet she did not reveal any sexual abuse by defendant in her initial report, despite that the sexual abuse had allegedly been occurring for some time. Counsel may have reasonably believed that the victim's failure to mention any sexual abuse in this earlier report undermined the credibility of her later allegations. Defendant has not overcome the presumption that counsel made a strategic decision to not object to this testimony.

Defendant also argues that defense counsel should have objected to Pecorilli's testimony about her conversation with her children in which she talked about the importance of being honest. Although defendant contends that this conversation was inadmissible hearsay, the testimony about this conversation was not introduced to establish its truth, but only to explain what prompted the victim to disclose defendant's sexual abuse. Therefore, it was not hearsay, MRE 801(c), and any hearsay objection would have been futile.

Defendant also argues that defense counsel was ineffective for stipulating to the use of a support person during the victim's testimony at trial. Although defendant argues that MCL 600.2163a did not authorize the presence of a support person because the victim was 17 years old at the time of trial, the prosecutor's motion and the stipulation were not based on that statute, but rather relied on MRE 611(a), which grants a trial court broad discretion to control the proceedings to protect witnesses from embarrassment or harassment. Regardless, defendant has not established that he was prejudiced by the presence of a support person. As the prosecutor points out, nothing in the record suggests that the jury was aware of the support person's role in supporting the victim.

Defendant also argues that defense counsel was ineffective for not objecting to the prosecutor's conduct discussed in part III, *supra*. As previously discussed, defendant has not established that the prosecutor's conduct was improper or prejudicial. Moreover, at the start of his closing argument, defense counsel informed the jury that he intentionally did not interrupt or object to the prosecutor's closing argument because "it is not evidence." Thus, in addition to our conclusion that the prosecutor's arguments were not improper, it is apparent that defense declined to object to the prosecutor's arguments as a matter of strategy.

Defendant argues that even if an isolated error by defense counsel does not require reversal, the cumulative effect of counsel's many errors denied him a fair trial. Although a single error in a trial may not necessarily provide a basis for granting a new trial, it is possible that the cumulative effect of multiple minor errors may add up to error requiring reversal. *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001). The test is whether the cumulative effect deprived the defendant of a fair and impartial trial. *Id*. at 387. The foregoing analysis demonstrates that defense counsel did not have a valid basis to object to defendant's many claims of evidentiary error or to the prosecutor's conduct, or there were sound strategy reasons for counsel's decisions. In addition, defendant has not demonstrated that he was prejudiced by counsel's stipulation to the presence of a support person during the victim's testimony. For these reasons, defendant has failed to show that he is entitled to a new trial due to the cumulative effect of counsel's performance at trial. See *id*.

## V. SCORING OF OFFENSE VARIABLE 11

Defendant challenges the trial court's scoring of offense variable (OV) 11 of the sentencing guidelines. The trial court prepared a sentencing information report for CSC-I in each of defendant's three cases. The court scored the guidelines the same in each case, and in each instance assessed 50 points for OV 11. The court's scoring decisions placed defendant in OV Level 5 (80 to 99 points), which combined with defendant's placement in Prior Record Variable Level D, resulted in a guidelines range of 135 to 225 months under the applicable sentencing grid, MCL 777.62. Defendant argues that the trial court erred by assessing 50 points for OV 11. We agree.

When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* A finding is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008).

MCL 777.41 provides:

(1) Offense variable 11 is criminal sexual penetration. Score offense variable 11 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) Two or more criminal sexual penetrations occurred . . . . . . . . 50 points

(b) One criminal sexual penetration occurred . . . . . . . . . . . . . . . 25 points

(c) No criminal sexual penetration occurred . . . . . . . . . . . . . . . . . 0 points

(2) All of the following apply to scoring offense variable 11:

(a) Score all sexual penetrations of the victim by the offender arising out of the sentencing offense.

(b) Multiple sexual penetrations of the victim by the offender extending beyond the sentencing offense may be scored in offense variables 12 or 13.

(c) Do not score points for the 1 penetration that forms the basis of a first- or third-degree criminal sexual conduct offense.

Defendant argued below that the trial court could not consider any penetrations that resulted in a conviction, even if they arose from the same sentencing offense. The trial court found, however, that because the victim had testified that defendant sexually penetrated her on at least 16 different occasions, there were "[t]wo or more criminal sexual penetrations" to support a 50-point score for OV 11. The trial court erred because it failed to consider that it could only

-15-

score "sexual penetrations of the victim by the offender *arising out of the sentencing offense*." MCL 777.41(2)(a) (emphasis added).

In *People v Johnson*, 474 Mich 96, 100; 712 NW2d 703 (2006), the Court explained that "arising out of the sentencing offense" "means that the 'sexual penetration of the victim must result or spring from the sentencing offense.'" The Court further explained:

> [W]e have previously defined "arising out of" to suggest a causal connection between two events of a sort that is more than incidental. We continue to believe that this sets forth the most reasonable definition of "arising out of." Something that "aris[es] out of," or springs from or results from something else, has a connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has arisen. For present purposes, this requires that there be such a relationship between the penetrations at issue and the sentencing offenses. [*Id.* at 101.]

Recently, in *People v Lampe*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 342325; issued February 21, 2019); slip op at 6, this Court stated:

> [D]efendant argues that, because he received two convictions for CSC-III, neither penetration resulting in a conviction could be considered when assessing points for OV 11. However, this Court has repeatedly rejected this argument. See *People v Cox*, 268 Mich App 440, 455-456; 709 NW2d 152 (2005); *People v McLaughlin*, 258 Mich App 635, 672-678; 672 NW2d 860 (2003); *Mutchie*, 251 Mich App at 278-281. In particular, this Court has concluded that "OV 11 requires the trial court to exclude *the one penetration* forming the basis of the offense when the sentencing offense itself is first-degree or third-degree CSC." *McLaughlin*, 258 Mich App at 676 (emphasis added). All other sexual penetrations arising from the sentencing offense, including penetrations resulting in separate CSC-I or CSC-III convictions, are properly considered under OV 11. See *Cox*, 268 Mich App at 455-456; *McLaughlin*, 258 Mich App at 672-678; *Mutchie*, 251 Mich App at 278-281. [Footnote omitted.]

Thus, although multiple penetrations resulting in separate convictions may be considered, it is still necessary that the multiple penetrations arise from the sentencing offense.

In LC No. 2017-000447-FC (Docket No. 342394), defendant was convicted of only one count of CSC-I for the incident that occurred in Sterling Heights. At trial, the victim testified regarding only one act of sexual penetration during that incident. Accordingly, when scoring the guidelines in LC No. 2017-000447-FC, the trial court should have assessed zero points for OV 11 because that sentencing offense involved only one act of sexual penetration, that act formed the basis of defendant's CSC-I conviction, and the court was not permitted to consider that penetration in scoring OV 11.

In LC No. 2017-001859-FC (Docket No. 342395), defendant was convicted of four counts of CSC-I for offenses that occurred in Eastpointe. However, those convictions arose from two separate incidents. The victim testified that one incident occurred when defendant

penetrated her with his penis and finger. The victim testified that on a separate occasion, defendant penetrated her with his penis and finger when she was alone with defendant in his bedroom. Because those convictions arose from two separate incidents, the four convictions did not arise out of the sentencing offense. At most, the victim's testimony supported a finding that there was one additional act of criminal sexual penetration beyond each sentencing offense. Thus, at most, the trial court should have assessed only 25 points for OV 11 in LC No. 2017-001859-FC.

In LC No. 2017-001865-FC (Docket No. 342396), defendant was convicted of two counts of CSC-I for offenses that occurred in Warren, but which appeared to have occurred on different days. However, the victim testified that defendant penetrated her twice during the incident that occurred after the fundraiser event, once vaginally and once orally. This testimony supported a score, at most, of 25 points for one additional act of sexual penetration beyond the sentencing offense in LC No. 2017-001865-FC.

Although the victim testified that she believed there were 16 incidents of sexual assault committed by defendant, she could not recall the details of the other nine incidents. Regardless, there was no evidence that the other incidents arose out of the sentencing offenses in these three cases. Therefore, as plaintiff concedes, the trial court could not score OV 11 on the basis of these other incidents. In each case, the trial court's scoring of OV 11 caused defendant to be placed in OV Level V, thereby increasing his guidelines range. As plaintiff concedes, because the scoring errors affect defendant's appropriate guidelines ranges, defendant is entitled to be resentenced. See *People v Francisco*, 474 Mich 82, 92; 711 NW2d 44 (2006).

We affirm defendant's convictions, but vacate his sentences and remand for resentencing. We do not retain jurisdiction.


/s/ Mark J. Cavanagh
/s/ Jane M. Beckering
/s/ Michael F. Gadola